# MERRIAM PARK COMMUNITY COUNCIL, INC., AND OTHERS v. MICHAEL J. McDONOUGH AND OTHERS.

210 N. W. 2d 416.

September 14, 1973—No. 43639.

*Vincent P. Courtney* and *Raymond W. Faricy, Jr.,* for appellants.

*John E. Daubney,* for respondent McDonough.

*Kenneth J. Fitzpatrick,* City Attorney, and *Paul F. McCloskey, Jr.,* Assistant City Attorney, for other respondents.

Heard before Knutson, C. J., and Otis, Kelly, and Gillespie, JJ.

PER CURIAM.

This is an appeal from a judgment of the district court upholding the actions of the St. Paul City Council in granting zoning code variances to defendant Michael J. McDonough to permit the construction of a 32-unit apartment building. Plaintiffs, a neighborhood nonprofit corporation and individuals who own property in the immediate vicinity of the proposed site, brought a declaratory judgment action praying that the action of the city council in granting the variances be declared arbitrary, capricious, and contrary to law.

The district court found in favor of defendants. On appeal, plaintiffs contend that defendant McDonough did not make a sufficient showing that "undue hardship," as used in Minn. St. 462.357, would result from the denial of the requested variances.

In February 1969, defendant Michael J. McDonough had acquired a tract of ground at the southeast corner of Prior and Iglehart Avenues in the city of St. Paul in order to demolish the four existing dwellings thereon and erect a 32-unit apartment building. The tract had a frontage of 225.2 feet on Iglehart and a depth of 141.52 feet south to the alley. The tract was zoned "B" Residence. McDonough applied for, and in March 1969, was granted rezoning to "C" Residence, a classification permitting the location of a 30-unit apartment building. However, the tract was not large enough to construct a 32-unit apartment building and leave enough room to conform with setback, buffer area, density, and building coverage requirements prescribed by the St. Paul Zoning Code for a "C" Residence District. Defendant McDonough applied in February 1969 for variances from the zoning code so as to allow the required setback of the building from Iglehart Avenue to be reduced from 35 feet to 16 feet; to permit the construction of 32 living units instead of the 30-unit maximum allowed on the tract under "C" Residence zoning; to permit an increase in ground area covered by the building from the 35 percent maximum permitted under "C" Residence zoning to 39.7 percent; and to permit a reduction of required side-yard clearance from 8 feet to 5 feet for the parking lot at the rear of the building.

More than a year subsequent to McDonough's application for variances, the city council adopted an amendment to its offstreet parking ordinance, changing the requirement for offstreet parking for multiple residential dwellings from a ratio of 1 offstreet parking space for each residential unit to 1½ offstreet parking spaces for each. Mr. McDonough then amended his application for variances to seek authorization for carrying out his original plan of furnishing only 32 offstreet parking spaces. For various reasons, none of which is chargeable to McDonough, the zoning board delayed acting upon his application for variances for another year, but in July 1971, upon the zoning board's favorable recommendation, the city council granted all the variances re-

quested, finding with respect to the setback variance that if all of the block in which the property is located had been zoned "C" Residence, the setback requirement would have been slightly over 14 feet, whereas the 35-foot setback requirement applicable to the subject tract was the result of complying with the ordinance provision which required taking the average setbacks of the homes in the block in existence at the time of the adoption of the zoning code. At the public hearings held on the question of the variances, all parties participated and offered evidence.

At the trial of plaintiffs' action, evidence was offered to show that defendant McDonough's cost of land acquisition was approximately $87,000; that without the variances only a 10-unit apartment could be built on defendant's tract; that the existing homes on the tract were 50 to 70 years old and in poor condition, and that the city had issued orders for rehabilitation at a cost in excess of $20,000; that it was not economical to tear down these houses and rebuild new single-family dwellings; that the comprehensive development plan for the city, as adopted by the planning board, had recommended development of the tract for multiple-residential purposes; that the prospective tenants of the proposed apartment units primarily would be older couples, many of whom would not own automobiles, and the anticipated demand for offstreet parking was not greater than would be accommodated by one space provided for each unit; and that the 32-unit apartment building was of a standard design, and a reduction to 30 living units would result in no material change in the design and foundation of the building.

The learned court below made findings of fact based upon the foregoing evidence and determined that the rehabilitation of the existing homes was impractical due to their age and physical condition; that the required 35-foot setback, under the conditions presented, was an undue hardship to the development of the tract for multiple-residence purposes; that the tract could not be reasonably and economically developed without the reduction of the setback requirement to 16 feet; that the delay in process-

ing defendant's requests for variances constituted a hardship peculiar to the tract due to the fact the ordinance requiring the additional offstreet parking space was passed during that delay; that the anticipated demand for offstreet parking was not greater than that provided after granting the variance requested; that the variances for density, ground coverage, and side-yard clearances were minimal in nature and would have little, if any, effect upon the valuation of adjacent properties; that the construction of a 10- or 11-unit apartment on the tract would be economically unfeasible and totally impractical because of the high land cost involved; that the granting of the parking variance requested was consistent with the public health and general welfare; and that a reduction in the number of units in the proposed apartment building from 32 to 30 would not materially change the design and function of the building and would only cause economic hardship to the applicant without any benefit to the community.

The trial court held that the action of the city council in granting the variance applications was not arbitrary, capricious, or unlawful and that it constituted a lawful exercise of its discretionary function.

The ultimate issue presented here is: Where defendant landowner applied for several variances from the St. Paul Zoning Code, would the strict enforcement of the code cause undue hardship because of circumstances unique to the individual property under consideration?

Minn. St. 462.357 grants municipalities the power to enact ordinances dividing the municipality into zones and regulating the height and size of buildings and density of population. Minn. St. 462.357, subd. 6, provides:

"Appeals to the board of appeals and adjustments [authorized by § 462.354] may be taken by any affected person upon compliance with any reasonable conditions imposed by the zoning ordinance. The board of appeals and adjustments has the following powers with respect to the zoning ordinance:

(1) To hear and decide appeals where it is alleged that there is an error in any order, requirement, decision, or determination made by an administrative officer in the enforcement of the zoning ordinance.

(2)  To hear requests for variances from the literal provisions of the ordinances in instances where their strict enforcement would cause *undue hardship because of circumstances unique to the individual property under consideration,* and to grant such variances only when it is demonstrated that such actions will be in keeping with the spirit and intent of the ordinance. The board of appeals and adjustments or the governing body as the case may be, may not permit as a variance any use that is not permitted under the ordinance for property in the zone where the affected person's land is located. The board or governing body as the case may be may impose conditions in the granting of variances to insure compliance and to protect adjacent properties." (Italics supplied.)

St. Paul Legislative Code, § 64.03, provides in relevant part:

"* * * The Council * * * may in a specific case, by resolution passed by a majority vote, after considering the recommendation of the [Zoning] Board and after such hearing, determine and vary the application of the provisions of the Zoning Code *in harmony with the general intent and purpose* of the same as follows:

\* \* \* \* \*

i.  Vary any provision of the Zoning Code in harmony with its general purpose and intent, where there are *practical difficulties or peculiar hardships* in the way of carrying out the strict letter of the provisions of this section, so that the public health, safety, and general welfare may be secured and substantial justice done * * *.

\* \* \* \* \*

t.  Relax or vary the provisions * * * pertaining to Schedule of Off-street Parking Requirements, upon submission of proof that the strict application of said Schedule * * * would work

*an unreasonable hardship in any particular case;* provided further that the Council shall expressly find in each such case that such relief shall be consistent with the public health and general welfare and in accordance with the purposes of said schedule of off-street parking requirements and provided further that the Council shall expressly find that the anticipated demand for off-street parking space in any particular case is not greater than the amount of parking space provided as a result of the relaxation of said Schedule * * *."

With respect to decisions of municipal and other governmental bodies having the duty of making decisions involving judgment and discretion, this court has repeatedly said that it is not the province of the trial court to substitute its judgment for that of the body making the decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination. Village of Edina v. Joseph, 264 Minn. 84, 119 N. W. 2d 809 (1962). On appeal, findings of fact by a trial court sitting without a jury will not be set aside unless clearly erroneous. Rule 52.01, Rules of Civil Procedure.

After making findings as hereinbefore summarized, the court below upheld the city council's action in granting the variances requested by defendant. The court concluded that the council did not act arbitrarily, oppressively, or unreasonably and that the evidence reasonably supported and justified its determination.

Plaintiffs contend that the words of Minn. St. 462.357, subd. 6, require that the undue hardship must arise from circumstances unique to the property itself—not the owner, surrounding neighborhood, economic feasibility, or like elements. They argue that the "unique circumstances" must be characteristic of the building site or the buildings thereon and that the property must be different from all others, i.e., having no like or equal. If this line of reasoning is followed, the granting of any

variance, no matter how minimal, would be practically impossible except where the topographic conditions of a specific parcel of land would render the tract of land in question otherwise valueless. Such an interpretation would render impotent the power and authority granted by the legislative act to the city council to grant variances "where such actions will be in keeping with the spirit and intent of the ordinance." The statute specifically prohibits the granting of a variance permitting any use that is not permitted under the ordinance for property in the zone where the affected person's land is located. By implication, therefore, it does not prohibit granting non-use variances such as those of area, height, setback, density, and parking requirements, if the granting thereof is in keeping with the spirit and intent of the ordinance and the refusal to grant them would cause undue hardship.

This court in Curry v. Young, 285 Minn. 387, 173 N. W. 2d 410 (1969), stated that the purposes of a variance in a zoning ordinance were aptly stated in Flagstad v. City of San Mateo, 156 Cal. App. 2d 138, 141, 318 P. 2d 825, 827 (1957), as follows:

"A variance provides the opportunity for amelioration of unnecessary hardships resulting from the rigid enforcement of a broad zoning ordinance, and thus avoids the acknowledged evils of 'spot zoning.' "

The Curry case involved a zoning ordinance which provided that no variances should be granted unless the board found (285 Minn. 390, 173 N. W. 2d 412):

"(1) Because of the particular physical surroundings, shape, or topographical conditions of the specific parcel of land involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience if the strict letter of the regulations were to be carried out,

"(2) the conditions upon which a petition for variation is based are unique to the parcel of land for which the variance is

sought, and are not applicable, generally, to other property within the same zoning classification,

"(3) the purpose of the variation is not based exclusively upon a desire to increase the value or income potential of the parcel of land * * *."

We affirmed the decision reached by the trial court, which found that the plaintiffs' lot in question, because of its unusual shape and size, would be rendered valueless if the setback requirement of the ordinance were enforced and that a denial of a non-use variance would deprive the owners of any use of their property, and ordered that the variance be granted even though granting it might work some hardship upon adjoining property owners.

The St. Paul ordinance with which we are dealing authorizes variances in harmony with the general intent and purpose of the zoning code where there are practical difficulties or peculiar hardships in the way of carrying out the strict letter of its provisions, so that the public health, safety, and general welfare may be secured and substantial justice may be done. There was substantial evidence in this case that sufficient practical difficulties existed to justify varying the provisions of the code as ordered by the city council. Likewise, there was a sufficient showing to justify the conclusion by the city council and the court below that the variances granted were in harmony with the general purpose and intent of the zoning code and that the public health, safety, and general welfare were secured and substantial justice was done.

Thus, we need only consider whether § 462.357, subd. 6, prohibits granting the subject variances. The trial court found that defendant would suffer undue hardship if the literal provisions of the zoning ordinance were strictly enforced. The statute provides that property owners may request variances where strict enforcement of the provisions would cause undue hardship "because of circumstances unique to the individual property under consideration." The trial court held that the evidence justified a determination that if the variances were not granted, defend-

ant would suffer undue hardship because of unique circumstances not reflective of conditions general to the neighborhood. The neighborhood is composed of older homes, generally maintained in adequate to excellent repair and superior to the condition of the structures on defendant's tract. The setback requirement was unique to the tract, as compared to the usual setback requirements in tracts in "C" Residence Districts. The offstreet parking requirement was amended a year after defendant's application for variances was made, action on which had been unduly delayed through no fault of defendant. Therefore, taking into consideration all the circumstances surrounding this particular parcel of land, the council could well consider the situation unique. The other variances were of minimal nature, and of a kind that would not adversely affect or alter the essential character of the locality. The general state of obsolescence of the existing structures on the subject tract and the large cost of repairs to make them conform to the building code requirements as ordered by the city could reasonably have been considered by the city council as unique to the subject tract.

We hold that on the record in this case the findings of fact made by the trial court were supported by substantial evidence and justified its conclusion that the St. Paul City Council did not act arbitrarily, oppressively, unreasonably, or unlawfully in granting the non-use variances requested by defendant.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.