Richard TUCKNER, et al., Appellants,

v.

TOWNSHIP OF MAY and Washington County, Respondents.

No. C9–87–1915.

Court of Appeals of Minnesota.

March 1, 1988.

David K. Hebert, Jergens Hebert Welch & Humphreys, Forest Lake, for appellants.

Richard M. Arney, Washington County Atty., Howard R. Turrentine, Asst. Co. Atty., Stillwater, for respondents.

Considered and decided by WOZNIAK, C.J., and PARKER and MULALLY *, JJ., with oral argument waived.

## OPINION

EDWARD D. MULALLY, Judge.

This is an appeal from the trial court's judgment affirming a decision of the Washington County Board of Adjustment and Appeals (the Board), which denied appellants Richard and June Tuckner's request for a variance. We affirm.

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

Appellants own Lots 74, 75, 76, and 77, Block 2, Carnelian Hills, which are contiguous parcels of land situated on Big Carnelian Lake in Washington County. Appellants' home is located on Lot 77. Lot 76 has a cabin which appellants rent out as a seasonal dwelling. Lots 74 and 75, which are considered to be one parcel, also have a cabin which is rented out as a seasonal dwelling.

Washington County Shoreland Management Ordinance (WCSMO) § 501.03 prohibits the owner of two or more contiguous lots or parcels of land from considering the individual lots or parcels as separate for purposes of sale or development if the individual lot or parcel does not meet the width or area requirements set forth. Under the WCSMO, the minimum lot size is 1.5 acres. None of appellants' lots meets the WCSMO requirements for size.

Appellants were advised of the contiguous lot provision in section 501.03 when they purchased Lots 74 and 75. Appellants were again informed of the provisions of section 501.03 when they requested a building permit from the Washington County Planner, and were told that if they wished to sell their property, all three structures on all four lots would have to be sold together as one unit.

In 1983 appellants decided to sell their property on Big Carnelian Lake and requested a variance from the WCSMO so they could sell Lots 76 and 77 as one parcel and 74 and 75 as another. The Board denied their request. In 1985 appellants reapplied for a variance, but this request was also denied. Pursuant to Minn.Stat. § 394.27, subd. 9 (1984), appellants appealed to Washington County District Court, which affirmed.

## ISSUES

1. Does section 501.03 apply to improved property?

2. Was the Board's denial of appellants' request for a variance arbitrary and capricious?

3. Did the trial court err in finding appellants failed to establish undue hardship?

## ANALYSIS

1. Appellants argue section 501.03 does not apply to improved property. Appellants urge this court to determine whether the phrase "lots or parcels of land" contained in section 501.03 means only unimproved real estate, or if it also includes real estate upon which improvements have been made.

Minn.Stat. § 394.21 (1984) authorizes Washington County to carry on county planning and zoning activities "for the purpose of promoting the health, safety, morals and general welfare of the community". Counties, like municipalities, have broad discretion in zoning matters, particularly in enacting a zoning ordinance. *See Odell v. City of Eagan*, 348 N.W.2d 792, 796 (Minn. Ct.App.1984).

The interpretation of an existing zoning ordinance is a question of law. *Id.* at 797. To interpret terms in an ordinance, the court must look at their plain and ordinary meaning. *Id.* While zoning ordinances should be construed strictly against the county and in favor of the property owner, *Frank's Nursery Sales v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980), the ordinance must always be considered in light of its underlying policy. *Id.* at 609.

a. Plain and ordinary terms.

The language of section 501.03 does not distinguish between improved and unimproved property. Rather, section 501.03 provides:

> If in a group of two or more contiguous *lots or parcels of land* owned or controlled by the same person, any individual lot or parcel does not meet the full width or area requirements of this Ordinance, such individual lot or parcel cannot be considered as a separate parcel of land *for purposes of sale or development* * * *.

(Emphasis added).

Because section 501.03 does not distinguish between improved and unimproved

property, the plain and ordinary meaning of the phrase "lots or parcels of land" would include all lots or parcels of land, whether improved or unimproved. This interpretation is consistent with the rest of section 501.03, as the individual lots or parcels of land are not to be considered separate parcels of land for *sale* or development. Inclusion of the word "sale" suggests section 501.03 applies to both improved and unimproved parcels of land. Had section 501.03 contemplated only development, then it may be more reasonable to construe section 501.03 to apply only to unimproved property.

b. Underlying policy of section 501.03.

In a memorandum attached to its order, the trial court stated:

The purpose of [section 501.03] is to restrict non-conforming uses in a way which will be conducive to their ultimately being phased out. See, *Hawkinson v. County of Itasca*, 304 Minn, 367, 373, 231 N.W.2d 279, 282 (1975).

The trial court concluded that allowing the sale of an improved lot would defeat the purpose of section 501.03. This is consistent with the well-established rule that non-conforming uses are to be restricted in a way which will be conducive to their ultimately being phased out. *County of Freeborn v. Claussen*, 295 Minn. 96, 102, 203 N.W.2d 323, 327 (1972).

Considering the plain and ordinary terms of section 501.03 and its underlying policy, we conclude section 501.03 applies to improved and unimproved property.

2. Appellants also contend denial of the variance request was arbitrary and capricious. On appeal, this court's role is to determine whether the county's actions were reasonable. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn.1983). This involves determining whether the actions were:

arbitrary and capricious, or whether the reasons assigned * * * do not have "the slightest validity" or bearing on the general welfare of the immediate area * * *

or whether the reasons given * * * were legally sufficient and had a factual basis. *Id.* (citations omitted).

The county has broad discretionary power to deny an application for variance. *Matter of Johnson*, 404 N.W.2d 298, 300 (Minn.Ct.App.1987). Since a variance enables a landowner to use property in a manner forbidden by the zoning ordinance, an applicant has a heavy burden to show approval is appropriate. *Id.*

The Board stated the following reasons for denying appellants' request for a variance:

[The Board] finds that one of the major purposes of the minimum lot size requirements set forth in the Washington County Development Code is to insure that there is not too great a density in terms of the number of individual sewage systems constructed in residential districts for the reasons:

(a) That there are inherent dangers to the underground water resources arising from the extensive concentration of onsite septic system;

(b) All individual sewage disposal systems are subject to malfunctioning and all such systems, even though designed to meet all requirements of the existing codes have inherent limitations and are subject to failure which may require the utilization of additional land as a secondary drain field and to the adjoining land being able to bear seepage without becoming saturated to the point where either the system fails or adjacent surface ground water becomes polluted.

* * * [the Board's] density requirements reflect the governing body's determination that limitations of density must be imposed in order to protect the health and safety of the public.

Appellants argue that consolidation of Lots 76 and 77 would not reduce the population density along Big Carnelian Lake. However, the trial court found appellants failed to establish that subdivision of their properties into two parcels would not create a potential health hazard to the public.

As the Board's actions are based on substantial evidence which it considered in analyzing the proper future course in this important and sensitive land use field, this court must uphold the Board's decision as reasonable. *See Dedering v. Johnson*, 307 Minn. 313, 322, 239 N.W.2d 913, 919 (1976).

■ 3. Both the Board and the trial court found appellants failed to establish undue hardship as defined in Minn.Stat. § 462.357, subd. 6(2) (1984):

> "Undue hardship" as used in connection with the granting of a variance means the property in question cannot be put to a reasonable use if used under the conditions allowed by the official controls, the plight of the landowner is due to circumstances unique to the property not created by the landowner, and the variance, if granted, will not alter the essential character of the locality.

We agree. The property may continue to be used as it is presently being used—a residential property with seasonal dwellings which may be rented out. This use is reasonable, even if it may not be as profitable as selling the property as separate parcels. Economic considerations alone shall not constitute a hardship if a reasonable use for the property exists. Minn.Stat. § 462.357, subd. 6(2).

In addition, appellants' plight is partially of their own making. Appellants were aware of the provisions of section 501.03 when they purchased Lots 74 and 75. They were told all three structures on all four lots would have to be sold together as one unit when they applied for a building permit. This alone would be a legitimate ground for denying the variance. *See Johnson*, 404 N.W.2d at 300.

### DECISION

Affirmed.