John ROWELL, Appellant,

v.

BOARD OF ADJUSTMENT OF THE CITY OF MOORHEAD, Trinity Lutheran Church, Respondents.

No. C7–89–637.

Court of Appeals of Minnesota.

Oct. 24, 1989.

Review Denied Dec. 15, 1989.

William Kirschner, Fargo, N.D., for appellant.

Gregory D. Lewis, Moorhead City Atty., Moorhead, for Bd. of Adjustment of the City of Moorhead.

Randolph E. Stefanson, Moorhead, for Trinity Lutheran Church.

Heard, considered and decided by SHORT, P.J., and FOLEY and LOMMEN *, JJ.

## OPINION

SHORT, Judge.

Trinity Lutheran Church (Trinity) obtained a zoning variance from the Board of Adjustment (Board) of the City of Moorhead (Moorhead). Appellant John Rowell brought suit against Trinity and Moorhead to invalidate Moorhead's action. The trial court granted summary judgment for the respondents. Rowell appealed, and we affirm.

## FACTS

On June 1, 1988, Trinity's architect sent a letter to Moorhead requesting a zoning variance to build an addition to an existing building three feet from the front property line. The Moorhead ordinance requires a front yard setback of 25 feet. Moorhead notified local residents of a public hearing to be held regarding Trinity's request for a variance. Rowell received notice.

On July 25, 1988, the Board held a public hearing. Rowell spoke at the hearing arguing the addition would expand the existing encroachment by Trinity, would cause a loss of green space, and that neighborhood meetings should be held to obtain neighborhood input on Trinity's proposal. Trinity's architect explained that a parsonage had been removed because it was no longer needed. A run-down apartment building had also been removed from the site and would be replaced by green space. The architect said the strip in front of the addition would be landscaped and maintained. The hearing was continued to July 26.

On July 26, the Board met and again discussed the matter. Rowell again spoke, arguing Trinity's request for a variance had not been sufficiently publicized. The Board decided to delay action until a neighborhood meeting could be held. On August 11, a neighborhood meeting was held. Twenty-three people attended, including Rowell and representatives of Trinity and Moorhead. On August 15, 1988, the Board met again. The architect explained that the addition would match the existing building's materials and architectural design, and that the roof lines would match. He also addressed concerns about parking congestion, saying Trinity planned to expand the parking lot. Rowell spoke against the variance, stating the addition would cause a loss of green space, increased traffic, and generally detract from the attractiveness of the historical neighborhood. He also argued the variance would violate Moorhead, Minn., Municipal Code § 10–2C–1 (1988), which prohibits enlarging nonconforming uses. Rowell also said the addition would be visible from his residence and the planned courtyard would not be adequate green space. The Board deferred a final vote on the variance pending advice from Moorhead's attorney.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

On August 29, 1988, the Board resumed its meeting, and Moorhead's attorney and Rowell's attorney argued about whether the variance violated Moorhead Municipal Code § 10–2C–1 on nonconforming uses. The Board approved the variance, with four members voting yes, one member voting no, and one member abstaining. Four affirmative votes were required to approve the variance.

All the meetings, except the neighborhood meeting, were taped and summarized in prepared minutes. On October 8, 1988, Rowell filed a lawsuit seeking declaratory and injunctive relief. The Board and Trinity answered and counterclaimed.

On November 8, 1988, the Board moved the trial court to remand the variance to the Board for the Board to enter a written decision containing formal findings. The Board met on December 5, 1988, and approved a resolution that was later filed with the trial court. Presented with a record of undisputed facts, the trial court granted respondents' motion for summary judgment.

## ISSUES

I. Does an applicant's failure to comply with procedural requirements of a zoning variance ordinance render a city's action invalid?

II. Does a grant of a variance authorized by ordinance violate another ordinance prohibiting expansion of existing nonconformities?

III. Is a financially contributing member of a church disqualified from voting on a zoning variance request from the church?

IV. Do aesthetic and functional considerations constitute undue hardship under Minn.Stat. § 462.357, subd. 6(2) (1988)?

## ANALYSIS

In reviewing a zoning action, we give no deference to the trial court's findings and conclusions. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn.1983). Where the municipal proceed-

ings are fair and complete, review is on the record before the municipal agency. *Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn.1988). This court is reluctant to interfere with the management of municipal affairs. *Id.* at 311.

### I.

The Moorhead Municipal Code provides that a variance shall not be granted by the Board unless:

1. A written application for a variance is submitted demonstrating:

a. That special conditions and circumstances exist which are peculiar to the land, structure or building involved and which are not applicable to other lands, structures or buildings in the same district;

b. That literal interpretation of the provisions of this Title would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Title;

c. That granting the variance requested will not confer on the applicant any special privilege that is denied by this Title to other lands, structures or buildings in the same district under the same conditions.

Moorhead, Minn., Municipal Code § 10–2–6(A) (1988).

 Rowell argues the June 1 letter and the accompanying site plan did not satisfy the requirements of this code provision, and that the Board's actions were thus ultra vires and void. While the June 1 letter did not contain the information required by section 10–2–6(A), the defect is technical. Technical defects made when complying with procedural requirements do not suffice to overturn governmental action, so long as the defects do not reflect bad faith, undermine the purposes of the procedures, or prejudice the rights of those intended to be protected by the procedures. *See City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 391 (Minn.1980). The information required by section 10–2–6(A) was presented at public hearings, of which Rowell had notice. In the absence of any suggestion of prejudice, Moorhead's deci-

sion to waive strict compliance with section 10-2-6(A) will not be overturned.

■ Further, Rowell is estopped from objecting to the variance on the grounds that the application was defective because he failed to raise the issue at the public hearings, despite the fact that he had legal representation and an opportunity to speak at the public hearings. The defects in the application could have been easily corrected if the issue had been raised at an earlier stage of the process. Under these circumstances, Rowell "sat on his rights" and is estopped from raising these issues in a lawsuit. *See Pilgrim v. City of Winona,* 256 N.W.2d 266, 270 (Minn.1977).

## II.

The Moorhead Municipal Code defines a variance as a "relaxation of the terms of the zoning ordinance," and it authorizes variances for, among other things, setback requirements. Moorhead, Minn., Municipal Code §§ 10-1-5, 10-2A-5 (1988).

The Moorhead Municipal Code states:

It is further the intent of this Title that the nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses not permitted in the district.

Moorhead, Minn., Municipal Code § 10-2C-1 (1988).

Nonconformities include conditions that were lawful when built, but are unlawful under existing zoning laws. *Id.* The existing Trinity building is three feet from the property line, but the distance is legal because it was "grandfathered in." Rowell argues the addition expands a nonconformity and thus violates section 10-2C-1.

■ The interpretation of an existing ordinance is a question of law for the court. *Amcon Corp. v. City of Eagan,* 348 N.W.2d 66, 72 (Minn.1984). The zoning variance authorized by sections 10-1-5 and 10-2A-5 arguably conflicts with the result otherwise dictated by section 10-2C-1. We are required, however, to attempt to construe the provisions together. *See* Minn. Stat. § 645.26, subd. 1 (1988). In doing so, we interpret the provisions most consistent

with the underlying purposes of the zoning code and construe them in favor of the property owner and against Moorhead. *Amcon Corp.,* 348 N.W.2d at 72. The interpretation a city gives its ordinances is entitled to some weight. *Chanhassen Estates Residents Association v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn. 1984).

Section 10-2C-1 does not specifically prohibit variances. Its prohibition against enlarging, expanding, or extending nonconformities can be read to mean that Trinity is prohibited from building its proposed addition closer to the property line than the current three feet. In other words, building two feet from the property line would extend or enlarge the existing three foot nonconformity. The variance granted under section 10-2A-5 can thus be read as consistent with section 10-2C-1, and if so construed, does not prohibit the variance in this case.

## III.

■ The deciding vote granting the variance was cast by a financially contributing member of Trinity. A public officer who is authorized to take part in any manner in making a contract in his official capacity shall not voluntarily have a personal financial interest in that contract, or personally benefit financially therefrom. Minn.Stat. § 471.87 (1988). The term "contract" in section 471.87 has been broadly construed. *See E.T.O., Inc. v. Town of Marion,* 375 N.W.2d 815, 819-20 (Minn.1985) (holding section 471.87 applies by analogy to issuance of a liquor license).

The seminal case discussing an impermissible interest is *Lenz v. Coon Creek Watershed District,* 278 Minn. 1, 153 N.W.2d 209 (1967). The *Lenz* court held a public official is disqualified if he or she has a direct interest in the outcome of the matter under consideration. The factors to determine whether such an interest exists include:

(1) the nature of the decision being made;

(2) the nature of the pecuniary interest;

(3) the number of officials making the decision who are interested;

(4) the need, if any, to have interested persons make the decision; and

(5) the other means available, if any, such as the opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests.

*Id.* at 15, 153 N.W.2d at 219. The *Lenz* court applied its test to find officials who owned land in the district to be benefited by the official action were not per se disqualified from voting. *Id.* at 16, 153 N.W.2d at 220.

Here, the nature of the pecuniary interest was such that it could not reasonably have influenced the voting Board member. We agree that the Board member had a non-pecuniary interest in the general welfare of Trinity. This interest, however, is not likely to be contrary to the interests of the general public. To disqualify city officials from matters in which their church has an interest would unnecessarily tie the hands of city agencies. City agencies would be particularly affected in smaller towns, where the likelihood of a city official being a member of the local church is greater. A Board member's membership in Trinity, without evidence of a closer connection, is not a sufficiently direct interest in the outcome of the matter under consideration to justify setting aside Moorhead's action. *See Shelton v. City of College Station,* 780 F.2d 475, 485–86 (5th Cir.1986) (en banc) (church member not disqualified from voting on zoning matter opposed by church), *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986).

## IV.

Finally, Rowell argues the Board's grant of a variance is void because Trinity failed to demonstrate undue hardship. A reviewing court will set aside a city's decision in a zoning variance matter if the decision is unreasonable. *VanLandschoot,* 336 N.W.2d at 508; *Tuckner v. Township of May,* 419 N.W.2d 836, 838 (Minn.Ct.App. 1988). Reasonableness is measured by the standards set out in the city's ordinances. *VanLandschoot,* 336 N.W.2d at 508 n. 6; *Castle Design & Development Co., Inc. v.*

*City of Lake Elmo,* 396 N.W.2d 578, 581 (Minn.Ct.App.1986). We will not invalidate Moorhead's zoning variance decision if Moorhead acted in good faith and within the broad discretion accorded it by statutes and ordinances. *VanLandschoot,* 336 N.W.2d at 509. Moorhead's decision will only be reversed if its stated reasons are legally insufficient or without factual basis. *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979).

A city's authority to grant variances cannot exceed the powers granted by Minn. Stat. § 462.357, subd. 6(2). *Costley v. Caromin House, Inc.,* 313 N.W.2d 21, 27 (Minn.1981). The statutory authority allows variances in cases of "undue hardship" where:

[T]he property in question cannot be put to a reasonable use if used under conditions allowed by the official controls, the plight of the landowner is due to circumstances unique to the property not created by the landowner, and the variance, if granted, will not alter the essential character of the locality. Economic considerations alone shall not constitute an undue hardship if reasonable use for the property exists under the terms of the ordinance.

Minn.Stat. § 462.357, subd. 6(2) (1988).

The Moorhead Municipal Code also authorizes variances only upon a showing of "undue hardship." Moorhead, Minn., Municipal Code §§ 10-1-5, 10-2A-5(B). By adopting the precise language of the enabling statute, the Moorhead ordinances grant the zoning authority the same power to grant variances as is allowed by Minn. Stat. § 462.357, subd. 6(2). Thus, if the variance is permitted by the statute, it is also permitted by the ordinance.

According to the stipulated facts, strict enforcement of Moorhead's setback requirement would require Trinity's addition to be built 22 feet back from the front line of the existing building. The Board's written decision found that enforcing the setback requirement would create hardship for Trinity because the addition would not be coordinated with the existing structure. The roof lines and front line would not

match, the internal corridors would be misaligned, and the classroom windows, exit routes and classroom configurations would be adversely affected. All these findings are supported by the evidence presented to the Board at the public hearings, either in testimonial form or from the blueprints of the addition plans.

■■ We believe these circumstances satisfy the requirements for undue hardship as defined by Minn.Stat. § 462.357, subd. 6(2). The first requirement is that the property cannot be put to a reasonable use without the variance. This provision does not mean that a property owner must show the land cannot be put to any reasonable use without the variance. In such a case the constitution would compel a variance regardless of the statute. *See Holasek v. Village of Medina,* 303 Minn. 240, 244, 226 N.W.2d 900, 903 (1975). The statute is clearly intended to allow cities the flexibility to grant variances in cases where the constitution does not compel it. Thus, we read the first part of the definition of "undue hardship" as *requiring a showing that the property owner would like to use the property in a reasonable manner that is prohibited by the ordinance.* On the facts of this case, the precise issue is whether it would be reasonable to expect Trinity to build its addition 22 feet back from the front line of the existing building. If evidence supports the Board's finding that building 22 feet back would be an unreasonable use, we must affirm.

The statute and ordinances unfortunately provide no standard for determining reasonableness. Minnesota courts distinguish between area and use variances. *In re Appeal of Kenney,* 374 N.W.2d 271, 274 (Minn.1985). An exemption from a setback requirement is an area variance. *Id.* Practical difficulties may justify an area variance. *See Merriam Park Community Council, Inc. v. McDonough,* 297 Minn. 285, 292, 210 N.W.2d 416, 420 (1973) (holding sufficient "practical difficulties" existed to justify area variance), *overruled on other grounds, Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 868 n. 4 (Minn.1979); *Curry v. Young,* 285

Minn. 387, 396–97, 173 N.W.2d 410, 415 (1969) (holding variance required where setback requirement would force property owner to build much smaller structure); *see generally* 3 R. Anderson, *American Law of Zoning* §§ 20.49–.52 (3d ed. 1986) (analyzing court decisions on area variances).

The evidence before the Board supported its determination that requiring Trinity to build its addition 22 feet back from the existing building is unreasonable. The Board properly considered the practical difficulties strict enforcement of the setback requirement would cause, including the functional and aesthetic concerns mentioned above.

■■ The second requirement is that the plight of the landowner is due to circumstances unique to the property not created by the landowner. The record reveals the existing church has only a three-foot setback because it was built before the enactment of the present ordinance. This is a unique circumstance not created by the landowner.

■■ The third requirement for undue hardship is that the variance, if granted, will not alter the essential character of the locality. Since the church already exists, an addition will not alter the character of the locality. The Board carefully conditioned its variance on Trinity's promise to plant trees, place planters along the facade of the addition, and preserve the existing courtyard and playgrounds. We think these precautions guard against any alteration of the character of the locality. Thus, the variance ordinance and statute have been satisfied, and Moorhead's finding of undue hardship is supported by the record.

## DECISION

Trinity's failure to comply with the procedural requirements in applying for a variance is not grounds for setting aside the Board's decision. The variance did not violate the ordinance prohibiting expansion of nonconformities. The Board's decision was not invalid because a voting member was a member of Trinity. Finally, the Board's

finding of undue hardship was supported by the record.

Affirmed.