529 N.W.2d 488 (1995)
Richard SAGSTETTER, et al., Appellants,
v.
CITY OF ST. PAUL, a Municipal Corporation, Respondent.
No. C8-94-2170.
Court of Appeals of Minnesota.
April 4, 1995.
*490 John E. Daubney, John E. Daubney Law Office, St. Paul, for appellants.
Timothy E. Marx, St. Paul City Atty., Jerome J. Segal, Asst. City Atty., St. Paul, for respondent.
Considered and decided by RANDALL, P.J., HARTEN and MINENKO,[*] JJ.

OPINION
RANDALL, Judge.
The Manager of St. Paul Social Services, Division of Parks and Recreation, requested a variance to build a domed softball field. The Board of Zoning Appeals (BZA) granted this request. Appellants challenged the variance before the St. Paul City Council (city council). The city council first reversed the BZA's decision, but then reconsidered its decision and affirmed the BZA's grant of the variance. Appellants then appealed to the district court, which affirmed. Appellants are now before this court.

FACTS
The city wanted to redesign a group of softball fields in a city park. As part of the project, the number of softball fields would be reduced from nine to five. This reduction would allow the city to add off-street parking, food concessions, and public restrooms. As part of the project, the city planned to build a structure around one of the fields that would support a dome during the winter months.
The dome would be 90 feet at its peak, with an average height of approximately 35 feet. The maximum allowed height under the zoning ordinance is 30 feet. The dome would be inflated during the winter months, but removed during the summer months.
Appellants own apartment buildings located next to the proposed dome site and claim the domed field will reduce the value of their properties.
The city wanted to provide year-round activities. Further, the new design allowed the city to add off-street parking. Parking on the street by park patrons was cited as a source of complaints from area residents. The plan also provided for public restrooms. Residents also complained that park patrons left the park grounds to urinate in the residents' yards. Finally, the plan provided for food concessions.
As part of its plan, the city explained that it considered excavating in order to reduce the dome's height above ground level, but that the soil conditions, together with the presence of sewer pipes, did not allow them to excavate.
The BZA granted the city's request for a variance. The appellants appealed to the city council. At its first hearing on the issue, the city council reversed the BZA, and denied the variance. One week later, the city council reconsidered the issue, affirmed the BZA's decision, and granted the variance.
The parties stipulated to the facts as contained in the record. The record is comprised of transcripts from before the city council, and documents presented to the BZA and the city council.
Appellants are before this court claiming the trial court erred in affirming the city council's decision to grant a variance to allow the domed structure to be built.

ISSUE
Was the city council's decision to grant the zoning variance reasonable and did it comply with the law?

ANALYSIS
In reviewing a zoning action, this court gives no deference to the district court's findings and conclusions. Rowell v. Board of Adjustment, 446 N.W.2d 917, 919 (Minn.App.1989), pet. for rev. denied (Minn. Dec. 15, 1989). Where the municipal proceedings are fair and complete, review is on *491 the record before the municipal agency, and this court is reluctant to interfere with the management of municipal affairs. Id.
A reviewing court will set aside a city's decision in a zoning variance matter if the decision is unreasonable. Id. at 921 (citing VanLandschoot v. City of Mendota Heights, 336 N.W.2d 503, 508 (Minn.1983)). Reasonableness is measured by the standards set out in the city's ordinances. Id. Reasonableness can be stated in terms of what is not arbitrary and capricious. See Honn v. City of Coon Rapids, 313 N.W.2d 409, 415 (Minn.1981). The reviewing court will not invalidate a city's zoning variance decision if the city acted in good faith and within the broad discretion accorded it by statutes and ordinances, and its decision will only be reversed "if its stated reasons are legally insufficient or without factual basis." Rowell, 446 N.W.2d at 921.
The power of municipalities and their zoning boards to grant area variances is governed by Minn.Stat. § 462.357, subd. 6 (1992).[1] A city's authority to grant variances cannot exceed the powers granted by this section. Rowell, 446 N.W.2d at 921.
The St. Paul City Ordinance regarding variances closely tracks the language of the state statute.[2] As in Rowell, by adopting the language of the enabling statute, the St. Paul ordinance grants the zoning authority the same power to grant variances as is allowed by Minn.Stat. § 462.357, subd. 6(2). Rowell, 446 N.W.2d at 921. Therefore, if the *492 variance is permitted by statute, it is also permitted by the ordinance. Id.
Appellants argue that the burden is on the city to show the variance is justified, citing Tuckner v. Township of May, 419 N.W.2d 836, 838 (Minn.App.1988). We are not persuaded. In Tuckner, this court held that the landowner had the burden to show that the county was unreasonable. Id. Here the variance was granted, and the burden is still on appellants to show the grant was unreasonable. Because zoning laws are a restriction on the use of private property, the burden of proof to show arbitrariness is lighter for landowners challenging denial of a special use permit than for objectors questioning approval of a permit. Board of Supervisors v. Carver County Bd. of Comm'rs, 302 Minn. 493, 499, 225 N.W.2d 815, 819 (1975).

Reasonable Use
Appellants construe the statute and ordinance sections, which state that the property "cannot be put to a reasonable use" under the strict provisions of the code, to mean that if the property can be put to any reasonable use, then granting a variance is unreasonable. This court has previously construed this language to mean that the landowner would like to put the land to a reasonable use, but that the proposed reasonable use is prohibited under the strict provisions of the code. Rowell, 446 N.W.2d at 922. The Rowell court stated that if a landowner could not put the land to any reasonable use under an ordinance, that the constitution would compel a variance regardless of the statute. Id. (citing Holasek v. Village of Medina, 303 Minn. 240, 244, 226 N.W.2d 900, 903 (1975)).
Here, the city wants to put the land to a reasonable use: placing a dome over the field to enable year-round use. The design of the entire park results from the city's desire to ameliorate local problems by adding parking spaces, concession facilities, and public rest-rooms. These are reasonable responses to valid concerns.

Unique Circumstances
Evidence was presented that soil conditions and a sewer main prohibited excavation that would allow the field to comply with the 30 foot height limitation in the ordinance. The plan alleviated parking problems, and if a different design were used, the plan would not provide as many parking spaces. The evidence supports the city council's determination that unique conditions justify a variance in this situation.

Spirit and Intent of the Zoning Code
Appellants argue the neighborhood petitions show that the domed field is not in keeping with the spirit of the code or consistent with health, safety, comfort, morals and welfare of the inhabitants of the City of St. Paul. The dome would allow local residents to take part in year-round activities such as playing softball on lighted fields, and a golf driving range. These factors show the city council's determination was reasonable.

Interference with Light and Air or Diminish Property Values
Appellants argue that the dome will interfere with light and air to their properties. The city council found that the dome, with an average height of 35 feet, but a height at its peak of 90 feet, would not unduly interfere with light or air. This finding is not unreasonable. A diagram in the record shows that the edge of the dome is 49 feet from the nearest structure, the garages to the apartment buildings. There is then space between the garages and the apartments. This diagram supports a finding that the dome will not really interfere with light and air to the apartments.
Joseph Coppersmith presented expert testimony that the dome would have an adverse economic impact on the apartments, testifying that the dome would have a negative impact on the landlords' ability to charge appropriate rents. Coppersmith also testified that the dome would change the neighborhood by making it more commercial.
The city council noted that the provision for year-round activities would not alter the essential character of the surrounding area, and would not unreasonably diminish property values. The plan was presented in response *493 to area resident complaints, and appears to address complaints of the area residents. The city council's determination was not unreasonable based on the conjectural factor of how much rents in the future could reasonably be charged.

Permitted Use
Under the city's zoning ordinance, specified uses include "Publicly owned and operated * * * recreation facilities" and "Municipal buildings and uses, without outdoor storage." St. Paul, Minn., Legislative Code § 60.412. Appellants argue that because Inside Sports will invest between $300,000 and $500,000 and will then lease the domed field, that the field is not "publicly owned and operated." We disagree. The city has invested $3,000,000 generated through a municipal bond offer. The city's investment, as much as ten times Inside Sports's investment, shows the city maintains a significant ownership interest in the property. Inside Sports will manage the field as a public facility, and this use complies with the use ordinance.
The Manager of Social Services for the Division of Parks and Recreation, filed the initial zoning application at the request of Inside Sports. Appellants state this fact somehow shows the city does not own the property. Because "any affected person" including a person holding a "leasehold interest" may apply for a variance, appellant's argument is unpersuasive. See Minn.Stat. § 462.357, subd. 6; St. Paul Ord § 64.203(a). Inside Sports will manage the field, but will have to comply with a lease from the city.
The city council's determination that the plan was a permitted use and would not alter the zoning district classification of the property was reasonable.

Increase of Value or Income Potential
Finally, appellants argue that the basis for the city council's decision was only economic. The ordinance provides that variance should not be based "primarily on a desire to increase the value or income potential of the parcel of land." St. Paul, Minn., Legislative Code § 64.203(b)(6) (emphasis added). The statute provides that "[e]conomic considerations alone shall not constitute an undue hardship if reasonable use for the property exists under the terms of the ordinance." Minn.Stat. § 462.357, subd. 6(2). Although increased revenues likely played a role in the city council's decision, it also considered other factors supporting the decisions. The plan responds to several valid concerns. We conclude the city council's decision was reasonable.
Under the standard of review of zoning decisions, so long as the municipal proceedings are fair and complete, this court is reluctant to interfere with the management of municipal affairs. Rowell, 446 N.W.2d at 919. Absent indication of arbitrary and capricious conduct or manifest injustice, appellate courts can, but do not readily, substitute their judgment for that of a city council's. The subjective balancing of factors in granting or denying variances is a classical area where judicial deference is extended to the executive branch.

DECISION
On these facts, the St. Paul City Council acted within its discretion, and its decision to grant a zoning variance was reasonable and complied with the law.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.
[1] That section provides

Appeals to the board of appeals and adjustments may be taken by any affected person upon compliance with any reasonable conditions imposed by the zoning ordinance. The board of appeals and adjustments has the following powers with respect to the zoning ordinance:
* * * * * *
(2) To hear requests for variances from the literal provisions of the ordinance in instances where their strict enforcement would cause undue hardship because of circumstances unique to the individual property under consideration, and to grant such variances only when it is demonstrated that such actions will be in keeping with the spirit and intent of the ordinance. "Undue hardship," as used in connection with the granting of a variance means the property in question cannot be put to a reasonable use if used under conditions allowed by the official controls, the plight of the landowner is due to circumstances unique to the property not created by the landowner, and the variance, if granted, will not alter the essential character of the locality. Economic considerations alone shall not constitute an undue hardship if reasonable use for the property exists under the terms of the ordinance. * * * The board of appeals and adjustments or the governing body as the case may be, may not permit as a variance any use that is not permitted under the ordinance for property in the zone where the affected person's land is located. * * * The board or governing body as the case may be may impose conditions in the granting of variances to insure compliance and to protect adjacent properties.
[2] The ordinance provides

(a) An application for variance may be filed by any person having an ownership or leasehold interest in land and/or building (contingent included), of the affected property at any time. Such application shall be filed with a site plan meeting requirements of section 64.102.
(b) The board of zoning appeals shall have the power to grant variances from the strict enforcement of the provisions of this code upon a finding that:
(1) The property in question cannot be put to a reasonable use under the strict provisions of the code;
(2) The plight of the landowner is due to circumstances unique to his property, and these circumstances were not created by the landowner;
(3) The proposed variance is in keeping with the spirit and intent of the code, and is consistent with the health, safety, comfort, morals and welfare of the inhabitants of the City of St. Paul;
(4) The proposed variance will not impair an adequate supply of light and air to adjacent property, nor will it alter the essential character of the surrounding area or unreasonably diminish established property values within the surrounding area;
(5) The variance, if granted, would not permit any use that is not permitted under the provisions of the code for the property in the district where the affected land is located, nor would it alter or change the zoning district classification of the property; and
(6) The request for variance is not based primarily on a desire to increase the value or income potential of the parcel of land.
* * * * * *
(d) In granting a variance, the board may attach thereto such conditions as it deems reasonable to protect adjacent properties, to ensure a compliance or to further the purposes of the code. In granting a variance, the board shall state the grounds upon which it justifies the granting of a variance.
St. Paul, Minn., Legislative Code § 64.203.