Stuart NOLAN, et al., Appellants,

Tom Hansen, et al., Plaintiffs,

v.

CITY OF EDEN PRAIRIE, James Perkins, et al., Respondents.

No. C9–99–1967.

Court of Appeals of Minnesota.

May 23, 2000.

Robert J. Tansey, Jr., Mark D. Wisser, Douglas R. Boettge, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, for appellants.

George C. Hoff, Kimberly B. Kozar, Hoff, Barry & Kuderer, P.A., Eden Prairie, for respondent Eden Prairie.

Jeffrey H. Olson, Leonard, O'Brien, Wilford, Spencer & Gale, Ltd., St. Paul, for respondents James and Raynelle Perkins, Pearl Freeburg, and Bank of Maple Plain.

Considered and decided by PETERSON, Presiding Judge, KALITOWSKI, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge

Appellants Stuart Nolan, et al., challenge the respondent City of Eden Prairie's approval of variances related to a preliminary plat, contending that the approval was in violation of statute and ordinance, and was arbitrary and capricious. Appellants also challenge approval of the preliminary plat, contending that a council member who had an unlawful conflict of interest cast the deciding vote. We affirm.

## FACTS

Respondents James Perkins, et al., own lakefront property located on Willow Creek Road. In 1989, the city approved a subdivision of the property into three lots along with nine variances. In 1998, Perkins filed an application with the city for revised preliminary platting. In connection with the application, Perkins attended several meetings of the city's staff development review committee and the planning commission, and met with the Minnesota Pollution Control Agency (MPCA) to assure that the proposed shared septic system complied with state standards. In January 1999, the planning commission reviewed the request and approved the revised preliminary plat by a 7–0 vote.

On March 2, 1999, the city council approved the preliminary plat by a vote of 3–2. The council was provided with a staff summary of the requested council action, which described the joint septic system as acceptable and summarized and attached three Department of Natural Resources (DNR) letters. The DNR letters detailed the standard minimum lot size and lakeshore setback, and commented on the heavy burden of showing hardship required for variances. The council members voting for the revised plat all expressed the opinion that the new plan was "more acceptable" or "better" than the previously approved 1989 plan.

On March 23, 1999, Nolan's attorney wrote the city attorney requesting that the city "formally acknowledge" that the preliminary plat vote failed on a 2–2 vote of disinterested council members because council member Ross Thorfinnson, Jr. had

a disqualifying conflict of interest. The letter asserted that the law requires that council member Thorfinnson's vote be set aside because he shares office space with attorneys Thomas Thorfinnson and Ross Thorfinnson, Sr., and the Thomas Thorfinnson and Ross Thorfinnson, Sr. law firm represents the Perkins in related litigation. On April 9, 1999, the city attorney sent a responsive letter disagreeing with the legal conclusion that Ross Thorfinnson, Jr. had a disqualifying conflict of interest.

On May 13, 1999, the city's board of adjustments and appeals denied the requested variances related to the preliminary plat. On July 6, 1999, the city council reviewed the variance request and reversed the board by a 3–2 vote. The city attorney spoke at length about the legal standard for variances, explaining that:

> The standard to which the Council is held is not that there cannot be any other reasonable use of the property, but a determination of whether this is a reasonable use of the property under the circumstances, and one that would not otherwise be allowed because of the requirement of the code.

The council memorialized its July 6 decision with findings that included the following:

8. The Preliminary Plat contains an improvement in the setback for Lot 1, which under the Preliminary Plat is 100 feet from the shoreland, whereas under the 1989 plat, it was 80 feet.

9. The Preliminary Plat contains an improvement in the setback for Lot 2, which under the Preliminary Plat is 75 feet from the shoreland, whereas under the 1989 plat, it was 40 feet.

10. Under the Preliminary Plat, the house pad on Lot 1 is moved 20 feet to the south to save vegetation next to the adjacent property.

11. The new drain fields provided for in the Preliminary Plat are further from the lake than under the 1989 plan. All three lots in the Preliminary Plat meet the 100 foot setback to the drain fields, whereas, only one of the lots met the requirement under the 1989 plan.

12. Under the Preliminary Plat, two of the three lots meet the requirement of frontage on a public street, whereas, under the 1989 plan, only one of the lots met that requirement.

13. Under the Preliminary Plat, two of the three lots meet the 150 foot lot width at the ordinary high water mark and the third lot is 145 feet at the ordinary high water mark requiring a variance of five feet. Under the 1989 plat, two of the three lots also met the requirement, but the third lot was only 80 feet at the ordinary high water mark.

14. The proposed use of the property is residential, in keeping with the character of the area. The three lots in the Preliminary Plat will have as much or greater shoreland than homes in the surrounding area.

15. The property presents unique circumstances in that there is difficulty in creating house pads and lot lines because the property is located at the terminus of a cul-de-sac.

16. The property further presents unique circumstances in that it is characterized by a stand of trees and a grade change from 896 feet to 856 feet, representing a grade change of 44 feet.

Meanwhile, on May 20, 1999, appellants had filed a complaint against the city seeking declaratory judgment that the revised preliminary plat approval vote failed because of a disqualifying conflict of interest. On August 11, 1999, appellants filed an amended complaint seeking further declaratory judgment that variances granted by the city were invalid because there was no showing of undue hardship as required by

ordinance and statute, and because the council acted arbitrarily and capriciously. The amended complaint also named the Perkins as defendants and sought injunctive relief barring development of the property. After a hearing, the district court granted summary judgment, finding there were no material fact issues and concluding that the city's determination that variance criteria were met was not arbitrary and capricious and that there was no disqualifying conflict of interest. Judgment was entered and this appeal followed.

## ISSUES

1. Did a city council member have a disqualifying conflict of interest in the city's preliminary plat approval?

2. Was the city's variance approval in violation of governing statute and ordinance, or otherwise arbitrary and capricious?

## ANALYSIS

The district court shall grant summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). On appeal, this court must view the evidence in the light most favorable to the party against whom judgment was granted. *Id.*

### I.

■ Appellants argue that council member Thorfinnson had a disqualifying conflict of interest because he shared office space with his brother's law firm, which was representing Perkins in appellants' challenge to the earlier 1989 plat. In *Lenz*, our supreme court addressed the issue of a disqualifying conflict of interest:

The purpose behind the creation of a rule which would disqualify public officials from participating in proceedings in a decision-making capacity when they have a direct interest in its outcome is to insure that their decision will not be an arbitrary reflection of their own selfish interests. There is no settled general rule as to whether such an interest will disqualify an official. Each case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests.

*Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 15, 153 N.W.2d 209, 219 (1967).

In this case, there is no evidence that council member Thorfinnson had a direct interest in the preliminary plat application. According to his deposition testimony, he did not know that his brother's firm was representing the Perkins in the 1989 plat litigation until he was so informed on the day of the March 2 vote. Even if he did have a direct interest in the preliminary plat approval, application of the *Lenz* factors does not lead to the conclusion that he should be disqualified. He has no obvious pecuniary interest and he is not involved in any contractual way. We conclude that there is no evidence supporting any reasonable argument that a conflict occurred here.

### II.

■ In considering zoning cases, this court reviews the decision of the city council independent of the findings and conclusions of the district court. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn.1983). Regardless of whether the zoning matter was legislative

or quasi-judicial, we determine whether the municipality's action in the particular case was reasonable. *Id.* We examine the action to determine whether it was arbitrary or capricious, or whether the reasons articulated by the municipality do not have the slightest validity or bearing on the general welfare, or whether the reasons were legally sufficient and had a factual basis. *Id.*

██ A municipality has broad discretionary power when considering an application for variances. *Id.* at 507–08. The fact that a reviewing court may have arrived at a different conclusion does not invalidate the judgment of the city officials if they acted in good faith and within the broad discretion accorded them by statutes and the relevant ordinances. *Id.* at 508.

### a. Statutory Standard

Appellants argue that the city granted the variances in violation of governing state statute and municipal ordinance. Minnesota law provides that a zoning authority may:

> hear requests for variances from the literal provisions of the ordinance in instances where their strict enforcement would cause undue hardship because of circumstances unique to the individual property under consideration, and to grant such variances only when it is demonstrated that such actions will be in keeping with the spirit and intent of the ordinance. "Undue hardship" as used in connection with the granting of a variance means the property in question cannot be put to a reasonable use if used under conditions allowed by the official controls, the plight of the landowner is due to circumstances unique to the property not created by the landowner, and the variance, if granted, will not alter the essential character of the locality. Economic considerations alone shall not constitute an undue hardship if reasonable use for the property exists under the terms of the ordinance.

Minn.Stat. § 462.357, subd. 6(2) (1998). The Eden Prairie City Code, § 11.76, subd. 1, (1984) also authorizes the granting of variances and tracks the language of Minn.Stat. § 462.357, subd. 6(2).

Appellants argue that the city council did not grant the variances for a hardship but merely because they found the new plan reasonable. Appellants urge that the city may grant a variance for undue hardship only if the landowner can put the property to no other reasonable use. *See VanLandschoot,* 336 N.W.2d at 509 (upholding denial of variances because even with denial there was a reasonable use for property); *Tuckner v. Township of May,* 419 N.W.2d 836, 839 (Minn.App.1988) (upholding denial of variances for failure to establish undue hardship because landowner can continue to use the property for its present reasonable use). The city responds that the correct standard is whether the proposal was reasonable under the circumstances, and would not be allowed except by granting the variances.

██ In *Rowell,* this court squarely addressed the question and explained that the statutory undue hardship requirement "does not mean that a property owner must show the land cannot be put to any reasonable use without the variance." *Rowell v. Board of Adjustment of the City of Moorhead,* 446 N.W.2d 917, 922 (Minn. App.1989), *review denied* (Minn. Dec. 15, 1989). Rather, the undue hardship standard requires a showing that the property owner would like to use their property in a reasonable manner that is prohibited by ordinance. *Id; see also Sagstetter v. City of Saint Paul,* 529 N.W.2d 488, 492 (Minn. App.1995) (applying reasonable use standard). *Rowell* makes clear that the three statutory requirements for granting a variance under the undue hardship standard are (1) reasonableness, (2) unique circumstances and (3) essential character of the locality. *Rowell,* 446 N.W.2d at 922.

██ First, we must evaluate the reasonableness of the requested variances against the fact that the city previously

granted the Perkins a number of variances in 1989. The newer variances granted in 1999 bring the property closer to compliance with the conditions allowed by the official controls. The city's findings number eight through thirteen listed the ways in which the 1999 variances vary less from code provisions than the 1989 variances. The reasonableness analysis might differ if the city had approved a request that was further from the original ordinance rather than more compliant. But here the variance request is reasonable because it is in keeping with the spirit and intent of the ordinance. *See Merriam Park Community Council, Inc. v. McDonough,* 297 Minn. 285, 291, 210 N.W.2d 416, 420 (1973*) overruled on other grounds, Northwestern College v. City of Adren Hills,* 281 N.W.2d 865, 868 n. 4 (Minn.1979).

Second, there is no dispute that the land has unique circumstances. The unique circumstances of the Perkins property were detailed in the city's finding number 15 and 16—the property is located at the end of a cul-de-sac, and has a stand of trees and a significant grade change of 44 feet. This finding reasonably supports the city's conclusion that unique circumstances justify granting the variances. Appellants argue, however, that the Perkins plight is of their own making and that their purpose in requesting variances is purely to increase resale value. Appellants seemingly ignore that the Perkins already had the 1989 variances and platting, and that the requested 1999 variances were arrived at after working with city staff over a period of months.

The third statutory requirement is that the variances not alter the essential character of the locality. The city's finding number fourteen was that the proposed use is in keeping with the character of the locality. Appellants, however, contend that the average lot size in the neighborhood is 1.556 acres and protest that one lot under the 1999 configuration is only .62 acres. How the one undersized lot significantly alters the essential character of the

neighborhood is not entirely clear. Appellants also protest the loss of open space, but the 1999 plan preserves as much, if not more, open space than the prior 1989 plan.

In sum, because the city's findings adequately addressed the three statutory requirements as described in *Rowell,* the statutory standard was satisfied.

### b. Arbitrary and Capricious

■ Appellants further argue that the variances were granted arbitrarily and capriciously in disregard of MPCA rules and DNR requirements. But appellants can point to no governing rule or ordinance requiring MPCA or DNR approval for the issuance of variances by a municipality. The MPCA does have sewage treatment standards that have been adopted by the city, but no MPCA approval is required. Both the city and the Perkins contend that the proposed septic system is in compliance with those standards, and appellants do not detail their assertion that the proposed septic system does not meet those standards.

As to DNR approval, the DNR letters articulate the DNR's standards, including the 100–foot shoreland setback. Minnesota Rules explain that:

> These minimum standards and criteria apply to those shorelands of public waters of the state which are subject to local government land use controls. They are intended to be incorporated into local government shoreland management controls. Each local government is responsible for administration and enforcement of its shoreland management controls adopted in compliance with these standards and criteria.

Minn. R. 6120.2800, subp. 1 (1997). Variances are granted in accordance with statute. Minn. R. 6120.3900, subp. 3 (1997). It is precisely because one of the lots does not meet the DNR 100–foot setback as required by city ordinance that a variance is required. We conclude that the city did

not grant the variances arbitrarily or capriciously.

## DECISION

There is no evidence of a disqualifying conflict of interest so as to invalidate the city's preliminary plat approval. The city's approval of related variances satisfied the statutory requirements for undue hardship and was not arbitrary or capricious.

**Affirmed.**