Beat L. KRUMMENACHER, Appellant,

v.

CITY OF MINNETONKA, Respondent,

JoAnne K. Liebeler, Respondent.

No. A08–1988.

Court of Appeals of Minnesota.

July 14, 2009.

---

Paul W. Chamberlain, Chamberlain Law Firm, Wayzata, MN, for appellant.

George C. Hoff, Hoff, Barry & Kuderer, PA, Eden Prairie, MN, for respondent City of Minnetonka.

James M. Susag, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for respondent Joanne K. Liebeler.

Considered and decided by KALITOWSKI, Presiding Judge; KLAPHAKE, Judge; and HUDSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Beat Krummenacher challenges respondent City of Minnetonka's grant of a variance to appellant's neighbor allowing an expansion of a nonconforming garage. Appellant argues that Minn.Stat. § 462.357, subd. 1e(a), prohibits expansion of a nonconforming property and that the record does not support the city's finding of undue hardship. Appellant also asserts that the district court erred in not addressing his motion to compel discovery before upholding the variance.

Because Minn.Stat. § 462.357, subd. 1e(a), does not limit a city's authority to grant a variance to allow an expansion of a nonconforming property and because the record was sufficient to allow review and supported the city's findings of undue hardship and consistency with the spirit and intent of the ordinance, we affirm.

## FACTS

Respondent JoAnne Liebeler requested a variance from the Minnetonka, Minn. Code of Ordinances (2009) (hereinafter Code of Ordinances) to allow an expansion of a detached nonconforming two-car garage. The garage is nonconforming because it is located 17 feet from the front property line along Ridgewood Road and predates the zoning ordinance requiring a minimum front yard setback of 50 feet. Code of Ordinances § 300.29.3(g) requires a variance for work that "constitutes an expansion of any nonconforming use." The garage has a flat roof that has leaked over the years. Liebeler proposed upgrading the garage with a pitched roof, which would allow for use of the space above the garage. Liebeler planned to finish this space for use as a personal yoga and craft studio. The height of the garage was to be 10.5 feet, which is below the city's 12–foot height limitation on detached garages.[1] She did not intend to alter the footprint of the garage.

Appellant owns and lives on property immediately west of Liebeler's property. Appellant opposed this variance request because the altered roofline would obstruct the view from his living room, arguably diminishing the value of his property. After a contested hearing on April 8, 2008, the Minnetonka City Planning Commission (planning commission) approved the variance, finding (1) undue hardship based on the topography of the site, width of the lot, location of the driveway and existing vegetation; (2) a unique circumstance based on the existing nonconforming setback; (3) full compliance with the city's zoning standards for detached garages except for the nonconforming front yard setback; and (4) no alteration of the character of the neighborhood because there is also a detached garage on the neighboring property with a 17–foot setback. On June 30, 2008, the

---

1. This measurement is made from the highest ground surface to the midpoint of the pitched roof. There is a difference in surface grade from the front of the garage to the back, resulting in a legal height of 10.5 feet.

Minnetonka City Council (city council) upheld the planning commission's decision and findings.

Appellant filed a complaint in district court requesting review of this decision based on the city's finding of undue hardship under Minn.Stat. § 462.357, subd. 6(2) (2008), and Code of Ordinances § 300.07.1(a), and based on the fact that the new structure would be habitable living quarters not qualifying as an uninhabited subordinate building under Code of Ordinances § 300.02.5. Appellant requested production of documents from the city and Liebeler to support his claim that the city only granted the variance because the garage project was to be filmed and aired on television, giving the city favorable publicity. Respondents objected to providing anything more than the city's record provided. The court determined that the city had provided a clear verbatim record of the proceedings and that no additional evidence was necessary for it to make a threshold decision of whether the city's decision was unreasonable, arbitrary, or capricious. The court ordered the parties to submit written arguments on this issue. After taking the matter under advisement, the court affirmed the city's grant of the variance based on its determination that the city's findings were sufficient to support its decision and that its decision was not unreasonable, arbitrary, or capricious. This appeal followed.

## ISSUES

1. Did the city have authority to grant a variance to allow an expansion of a nonconforming property?

2. Was the city's approval of Liebeler's variance request unreasonable, arbitrary, or capricious?

3. Was the record sufficient to allow review of whether the city's approval was unreasonable, arbitrary, or capricious, or did the district court err in refusing to compel discovery requested by appellant?

## ANALYSIS

*Standards of Review*

■ The interpretation of statutes and ordinances presents a question of law that this court reviews de novo. *Cummings v. Koehnen*, 568 N.W.2d 418, 420 (Minn. 1997). We review the decision of a city in a zoning case independent of the findings and conclusions of the district court to determine whether the city's action was reasonable, or arbitrary or capricious. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn.1983). This court decides whether the reasons articulated by the city were "legally sufficient and had a factual basis," or did not have the "slightest validity or bearing on the general welfare." *Id.* (quotation omitted). Although rebuttable, there is a strong presumption that a city's actions are proper. *Arcadia Dev. Corp. v. City of Bloomington*, 267 Minn. 221, 226, 125 N.W.2d 846, 850 (1964).

1.

■ Appellant argues that Minn.Stat. § 462.357, subd. 1e(a), prohibits a city from granting a variance to allow an expansion of a nonconforming use. Minn. Stat. § 462.357 (2008) gives municipalities the authority to establish zoning controls, "[f]or the purpose of promoting the public health, safety, morals, and general welfare[.]" *Id.*, subd. 1. Minn.Stat. § 462.357, subd. 1e(a), addresses nonconformities and provides that "[a]ny nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, maintenance, or improvement, but not including expansion[.]" Appellant contends

that the 2004 amendment[2] to this statute adding "replacement, restoration, or improvement" to the list of changes that had previously included only "repair or maintenance," while specifically excluding "expansion," makes it clear that a nonconformity cannot be expanded.

We conclude that Minn.Stat. § 462.357, subd. 1e(a), only limits a city's ability to *prohibit* the specified permitted changes to a nonconformity, but does not prohibit a city from allowing an expansion by granting a variance. Minn.Stat. § 462.357, subd. 6, establishes the scope of a municipality's authority to grant variances from the provisions of an ordinance. A city may also establish by ordinance the standards under which it will grant a variance. *Van-Landschoot*, 336 N.W.2d at 508, n. 6.

Code of Ordinances § 300.29 governs nonconforming uses. Section 300.29.3 restates the general standard contained in Minn.Stat. § 462.357, subd. 1e(a), excluding "expansion" from what is permitted when a nonconforming use is continued. However, section 300.29.3(g) requires a variance to perform "[w]ork that constitutes an expansion of any nonconforming use," indicating that a property owner may apply for a variance to allow an otherwise impermissible expansion. Section 300.29.3(g)(1) further clarifies the necessity of a variance when "the use occupies any space within a nonconforming area that was previously not occupied both vertically and horizontally," giving an example of when "a second floor area is expanded into the nonconforming setback ..."[3] Code of Ordinances § 300.07.1(a) gives the city au-

thority to grant a variance from "the literal provisions of this ordinance in instances where strict enforcement would cause undue hardship."

The Code of Ordinances accords the city council and planning commission authority to approve expansions of nonconforming land uses and nonconforming development.[4] Minnetonka Code of Ordinances § 300.29.3(g); .2(b), (c). Appellant's construction of Minn.Stat. § 462.357, subd. 1e(a), to prohibit all expansions of any nonconformity, ignores the city's authority to grant variances. The prohibitions against expanding nonconformities contained in Minn.Stat. § 462.357, subd. 1e(a), and Code of Ordinances § 300.29.3 are qualified by the authority given to grant variances. *See Appeal of Kenney*, 374 N.W.2d 271, 275 (Minn.1985) (permitting a county board of adjustment to grant a variance to expand nonconforming use); *Rowell v. Bd. of Adjustment*, 446 N.W.2d 917, 920 (Minn.App.1989) (granting variance did not violate ordinance prohibiting expansion of existing nonconformities), *review denied* (Minn. Dec. 15, 1989).

The provisions of both the statute and ordinance conferring authority to grant variances would be rendered meaningless if such variances were prohibited by the nonconforming use statute and ordinance. *See* Minn.Stat. § 645.16 (2008) ("Every law shall be construed, if possible, to give effect to all its provisions"). The city council had the authority to issue a variance to expand Liebeler's garage.

---

2. *See* 2004 Minn. Laws, ch. 258, § 2 at 871.

3. This is almost identical to Liebeler's request; the proposed alteration of the flat roof on the garage would expand an area under the proposed pitched roof into the nonconforming setback.

4. " 'Nonconforming development' means a legal nonconformity other than a nonconforming land use, that complied with ordinance standards at the time it was established but that does not currently conform to an ordinance standard such as height, setback, or size." Code of Ordinances § 300.29.2(c).

### 2.

*Undue Hardship*

■ According to both Minnesota statute and Minnetonka ordinance, the city must evaluate variance requests to determine whether the strict enforcement of an ordinance without the requested variance would cause a property owner to suffer an undue hardship. Minn.Stat. § 462.357, subd. 6; Code of Ordinances § 300.07. "Undue hardship" is defined by both statute and ordinance to include three factors: (1) lack of reasonable use without the variance; (2) unique circumstances not shared by neighboring properties and not created by the landowner; and (3) maintenance of the essential character of the locality, despite the variance. Minn.Stat. § 462.357, subd. 6(2); Code of Ordinances § 300.07.1(a). A variance is only permitted when an applicant demonstrates all three factors are met. *Nolan v. City of Eden Prairie*, 610 N.W.2d 697, 701 (Minn. App.2000), *review denied* (Minn. July 25, 2000). In addition, both the statute and the ordinance permit variances only when the approved actions will be consistent with the spirit and intent of the ordinance.

■ Appellant argues that the city's decision to grant the variance was unreasonable, arbitrary, and capricious because Liebeler did not demonstrate that any of the three required factors were met and that the alterations would be inconsistent with the spirit and intent of the ordinance.

*Reasonable Use*

■ Appellant argues that because the existing one-story garage has been, and can continue to be, used as a garage, there is a reasonable use for the property without the grant of the variance allowing the roof to be pitched. However, Liebeler only needed to show that she would like to use the property in a reasonable manner that is prohibited by the ordinance. *Id.* at 701. Minn.Stat. § 462.357, subd. 6, does not require a property owner to demonstrate that the property cannot be put to any reasonable use without the variance. *Rowell*, 446 N.W.2d at 922. Liebeler simply wants to pitch the roof, which is a reasonable use, but would violate the setback ordinance by expanding an area under the proposed pitched roof into the nonconforming setback. In fact, the resulting height of the garage at 10.5 feet would be below the city's 12–foot height limitation on detached garages. The footprint of the garage would not be altered and the planning commission's findings confirmed that "the proposed addition fully complied with the city's zoning standards for detached garages except for the nonconforming front yard setback." Thus, the proposed use is reasonable. Additionally, it is not clear that Liebeler can continue to use the existing one-story garage without the variance, as appellant suggests. She has not been able to use the garage to store her cars because the flat roof leaks. Therefore, it was not unreasonable for the city to find that this factor was met.

*Unique Circumstances*

Appellant contends that the only unique circumstance cited by the city as a basis for its decision is the nonconforming setback, which appellant argues does not result in a "plight" to Liebeler. Both the Minnesota statute and the Minnetonka ordinance require that "the plight of the landowner is due to circumstances unique to the property[.]" Minn.Stat. § 462.357, subd. 6; Code of Ordinances § 300.0701(a). The city found undue hardship "due to the topography of the site, width of the lot, location of the driveway and existing vegetation." These unique characteristics make it difficult, if not impossible, to move the garage to a space on the property that would enable Liebeler to replace the flat roof with a pitched roof without violating the front yard setback ordinance. Liebel-

er's plight is due to circumstances unique to the property.

*Essential Character of the Neighborhood/Locality*

Appellant disagrees with the planning commission's finding that the new structure would not alter the character of the neighborhood because there is another detached garage on the neighboring property with a 17 foot setback. Appellant objects because the garage on the neighboring property is not two stories, nor are there other nonconforming garages in the neighborhood with a second level. However, the lack of identical nonconforming uses is not dispositive of whether simply adding a pitched roof would alter the character of the neighborhood. The city council found specifically that the improved garage would "not alter the character of the neighborhood" and that "[t]he improvements would visually enhance the exterior of the garage." The transcript from the city council meeting of June 30, 2008, indicates discussion regarding the enhancement to the neighborhood. The existing grandfathered garage is a concrete block, 40–50 year old structure right next to the road. City council members opined that the city was getting a significant improvement to the neighborhood in exchange for granting a simple variance allowing the expansion. The reasons articulated by the city had a factual basis supporting the city's finding of this factor.

*Spirit and Intent of the Ordinance*

Appellant argues that the city's approval of Liebeler's variance violates the spirit and intent of the ordinance because it changes the use of an accessory structure from garage space to living quarters in violation of the ordinance. Code of Ordinances § 300.02.5 defines an "accessory structure" as "an uninhabited subordinate building or other subordinate structure, including garages, sheds or storage buildings ... located on the same lot as a principal building, the use of which is clearly subordinate to the use of the principal building." A garage is defined by Code of Ordinances § 300.02.62 as "a detached or attached accessory structure designed or used for the parking and storage of vehicles owned and operated by residents of a principal structure on the same lot." The variance allows Liebeler to finish space on the second level of the garage under the new pitched roof for a personal yoga and craft studio. Appellant argues that the space is thus transformed from uninhabited space to living quarters, in violation of the ordinance, and thus, the spirit and intent of the ordinance.

The second floor of the garage will not be transformed into space that can be lived in independently of the principal structure on Liebeler's property. It will not have running water or sewer services. The meaning of "inhabit" as defined by *Black's Law Dictionary* 786 (7th ed. 1999) is "to dwell in; to occupy permanently or habitually as a residence." Liebeler is not proposing to occupy the second floor of the detached garage as a residence. Many people use their garages for purposes other than storing their cars, which does not equate to living in them. Under the ordinary meaning of the word "uninhabited," the proposed use for the garage does not violate the ordinance.

The ordinance under which the variance was granted prohibited the expansion of nonconformities. It is the spirit and intent of this ordinance that must not be violated. The city considered the fact that this garage was grandfathered in and was allowed to encroach upon the setback requirements. Given that the city could not require the garage to be demolished, the city considered the proposed changes in light of the nonconforming use ordinance. The city found that because "[t]he improvements would not increase the foot-

print of the garage, and would comply with the zoning ordinance requirements for a detached garage for maximum height and size," it complied with the intent of the ordinance. The city reasonably concluded that the proposed expansion, which conformed to all ordinances, with the exception of the nonconforming front yard setback ordinance, did not violate the spirit and intent of the nonconforming use ordinance.

Therefore, the city's approval of Liebeler's variance request was not unreasonable, arbitrary, or capricious because the reasons articulated by the city were legally sufficient and had a factual basis to support (1) the three required factors of undue hardship and (2) its conclusion that the proposed alterations are consistent with the spirit and intent of the ordinance. Appellant has failed to rebut the strong presumption that the city's actions were proper.

**3.**

■ Appellant argues that the district court erred by refusing to rule on his motion to compel discovery or to augment the record in a district court hearing. The district court determined that the city had provided a clear, verbatim record of the proceedings and that no additional evidence was necessary for it to make a threshold decision of whether the city's decision was unreasonable, arbitrary, or capricious. *See Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416 (Minn.1981) (holding that a record of municipal proceedings is adequate, for purposes of judicial review, where reasons for the decision are reduced to writing in more than just a conclusory fashion).

Because the record contains detailed minutes from the two public hearings (planning commission meeting minutes of May 15, 2008 and city council meeting minutes of June 30, 2008), the staff report for the planning commission, the staff report for the city council meeting, a written transcript of the planning commission meeting of May 15, 2008, and a written transcript of the city council meeting of June 30, 2008, we conclude the district court did not err. These, together with the resolution, clearly set forth the findings and reasons for the approval of the requested variance based on facts presented to the city and its planning commission and are therefore sufficient to support the city's approval. The record here is sufficient to allow review of the basis for the city's decision. There is no reason to require additional discovery or a hearing in this case to make the city prove it acted reasonably when the existing record is sufficient to demonstrate its decision was reasoned and not capricious.

**D E C I S I O N**

Minn.Stat. § 462.357, subd. 13(a), allows a municipality to prohibit a nonconforming use but does not limit a municipality's authority to grant a variance to permit an expansion of a nonconforming use of property. A municipality's approval of a variance is not unreasonable, arbitrary, or capricious when the decision is supported by evidence of undue hardship. The district court need not compel discovery or hold hearings when the record of the municipal decisionmaking process is adequate to permit informed judicial review.

**Affirmed.**