Beat L. KRUMMENACHER, Appellant,

v.

CITY OF MINNETONKA, Respondent,

JoAnne K. Liebeler, Respondent.

No. A08–1988.

Supreme Court of Minnesota.

June 24, 2010.

Paul W. Chamberlain, Ryan R. Kuhlmann, Chamberlain Law Firm, Wayzata, MN, for appellant.

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, MN, for respondent City of Minnetonka.

James M. Susag, Larkin, Hoffman, Daly & Lindgren Ltd., Bloomington, MN, for respondent JoAnne Liebeler.

Susan L. Naughton, St. Paul, MN, for amicus curiae League of Minnesota Cities.

OPINION

GILDEA, Justice.

This case involves the decision of respondent City of Minnetonka to grant a variance to respondent JoAnne Liebeler so that she could expand her nonconforming garage. Appellant Beat Krummenacher is Liebeler's neighbor and he challenges the City's decision. The district court upheld the City's variance, and the court of appeals affirmed. *See Krummenacher v. City of Minnetonka,* 768 N.W.2d 377, 384 (Minn.App.2009). Because we conclude that the City applied the wrong standard to Liebeler's variance request, we reverse and remand to the City for reconsideration under the correct standard.

Liebeler owns property located in Minnetonka. Krummenacher is Liebeler's neighbor to the west. Liebeler's property consists of a 2.4–acre lot, which contains a 2,975–square–foot home and an attached two-car garage. The property also contains a detached flat-roofed garage that a previous owner constructed sometime in the 1940s. The City has an ordinance requiring that the detached garage be set back a minimum of 50 feet from the property's boundary line. Minnetonka City Code § 300.10. Liebeler's garage was constructed before this ordinance went into effect, and it does not satisfy the setback requirement. Specifically, the garage is nonconforming because it is set back only 17 feet from the front yard lot line. Because the garage was constructed before the ordinance became effective, however, the garage is a permissible nonconformity.

On March 31, 2008, Liebeler applied for a variance to expand the detached garage by adding a pitched roof and a second-story room above the garage that could be used as a yoga studio and craft room. Liebeler's proposal was to renovate the garage itself, both to fix its leakage problems and improve its appearance, and also to expand the garage by adding a living space above it. Because adding a second story to the garage would result in a vertical expansion of a nonconforming structure, Liebeler was required, under the Minnetonka City Code, to apply for a variance from the City.[1] *See* Minnetonka City Code § 300.29.3(g). Liebeler's proposed addition would not alter the footprint of the garage and would comply with the City zoning requirements for a detached garage with respect to maximum height and size.

The City's Planning Commission held a public hearing on May 15, 2008, to consider Liebeler's request. Both Liebeler and Krummenacher had an opportunity to present their arguments at that hearing. Liebeler explained that she believed that the flat roof was causing leakage problems and that the structure itself needed to be updated. Krummenacher objected to Liebeler's proposed project, explaining that the added height of the garage would obstruct his view to the east.

The Planning Commission approved Liebeler's request for the variance. The Planning Commission based its decision on the following findings: (1) the denial of a variance would cause "undue hardship" because of the "topography of the site, width of the lot, location of the driveway, and existing vegetation"; (2) the preexisting nonconforming setback was a "unique circumstance"; (3) Liebeler's proposal would comply with the "intent of the ordinance"

because it satisfied the "zoning ordinance requirements for a detached garage for maximum height and size" and did not alter the footprint of the garage; and (4) the proposal would not alter the "neighborhood character" because it would "visually enhance the exterior of the garage" and because there was another detached garage on a nearby property that was also set back only 17 feet from the road.

Krummenacher appealed the Planning Commission's decision to the Minnetonka City Council. The City Council held a public hearing on the variance request on June 30, 2008, at which both sides presented their arguments. After an examination of the record, the City Council upheld the Planning Commission's decision and findings. The City Council found that Liebeler's "proposal is reasonable and would meet the required standards for a variance." The council listed four requirements and found that the variance satisfied those requirements as follows:

(1) Undue Hardship: there is an undue hardship due to the topography of the site, width of the lot, location of the driveway and existing vegetation.

(2) Unique Circumstance: The existing, non-conforming setback is a circumstance that is not common to every similarly zoned property.

(3) Intent of the Ordinance: The improvements would not increase the footprint of the garage, and would comply with the zoning ordinance requirements for a detached garage for maximum height and size.

(4) Neighborhood Character: The garage improvements would not alter the character of the neighborhood. The improvements would visually enhance the

---

1. It appears that Liebeler did not attempt to move the garage to a conforming location because the unusual characteristics of the lot made relocation impracticable. Liebeler's lot is L-shaped with only 45-feet of frontage on the road. Moreover, there is a significant slope immediately behind the garage, making it difficult to move the garage back.

exterior of the garage. There is also a detached garage on the property to the east that is set back 17 feet from [the street].

Krummenacher then brought suit in district court challenging, among other things, the City's finding of undue hardship. Krummenacher served discovery requests asking for additional documents from the City, but the City objected to providing more than the City's record on the grounds that the case was properly subject to record review. The court declined to order the City to produce the additional documents, and affirmed the City's decision to grant the variance to Liebeler, concluding that the City's decision was not "arbitrary and capricious."

Krummenacher appealed to the court of appeals. On appeal, he raised three issues. First, he argued that Minn.Stat. § 462.357, subd. 1e(a) (2008), prohibits the City from granting a variance to allow the expansion of a nonconforming use. *Krummenacher*, 768 N.W.2d at 380–81. Second, he argued that the City's approval of the variance request was "arbitrary and capricious" because Liebeler had failed to meet the "undue hardship" standard of Minn. Stat. § 462.357, subd. 6. *See Krummenacher*, 768 N.W.2d at 382–84. Last, he argued that the district court erred in refusing to compel additional discovery by the City. *See id.* at 384. The court of appeals affirmed the district court's decision in all respects.

We granted Krummenacher's petition for review. On appeal to our court, Krummenacher advances the same three arguments he made to the court of appeals.[2]

## I.

█ We turn first to Krummenacher's argument that Minn.Stat. § 462.357, subd. 1e, prohibits a municipality from granting a variance that allows for the expansion of a nonconforming structure. Section 462.357, subdivision 1e, provides in relevant part:

(a) Any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, maintenance, or improvement, *but not including expansion* . . . .

(b) A municipality may, by ordinance, permit an expansion or impose upon nonconformities reasonable regulations to prevent and abate nuisances and to protect the public health, welfare, or safety.

(Emphasis added.)[3] Krummenacher argues that because the plain language of paragraph (a) of subdivision 1e prohibits the expansion of any nonconformity, the City's decision allowing Liebeler to expand

---

**2.** On January 26, 2010, Liebeler filed a motion to dismiss, arguing that we should dismiss the case on the grounds that construction of the expanded garage has been completed, rendering Krummenacher's claims moot. The motion to dismiss is denied.

**3.** In its brief, the City cites the 2009 version of section 462.357, subdivision 1e(a) which reads:

*Except as otherwise provided by law,* any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, maintenance, or improvement, but not including expansion . . . .

Minn.Stat. § 462.357 (Supp.2009) (new language in italics). The "except as otherwise provided" language in this version of subdivision 1e(a), however, did not become effective until May 22, 2009, which was after the City granted the variance. *See* Act of May 21, 2009, ch. 149, § 4, 2009 Minn. Laws 2025, 2028. We therefore do not rely on this version of the statute. We apply the 2008 version of subdivision 1e, the version of the statute in effect when the variance was granted.

her nonconforming garage must be reversed. The City argues that subdivision 1e(a) restricts the ability of property owners to expand nonconforming uses, but that under subdivision 1e(b), a municipality is permitted to allow an expansion pursuant to ordinance.

The construction of a statute is a question of law that we review de novo. *Clark v. Lindquist*, 683 N.W.2d 784, 785 (Minn.2004).[4] To interpret a statute, we first assess "whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). If the law is "clear and free from all ambiguity," the plain meaning controls and is not "disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2008); *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn.1995) ("Where the intention of the legislature is clearly manifested by plain unambiguous language . . . no construction is necessary or permitted."). The legislature has also stated that it intends the entire statute to be effective. Minn.Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions.").

This case is about a structure that does not conform with local land use restrictions. We have recognized that a local zoning ordinance "may constitutionally prohibit the creation of uses which are nonconforming." *County of Freeborn v. Claussen*, 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972). As to "existing nonconforming uses," however, these "must either be permitted to remain or be eliminated by use of eminent domain." *Id.* But a local government "is not required" to permit the expansion of such nonconformities. *Id.*

Subdivision 1e is consistent with these principles. We read the subdivision in its entirety and give effect to both paragraph (a) and paragraph (b). Minn.Stat. § 645.16; *see also In re Kenney*, 374 N.W.2d 271, 274 (Minn.1985) ("A statute will be construed so as to give effect to all of its parts."). In paragraph (a), the legislature, with certain exceptions not relevant here, prohibits a municipality from ordering the removal of nonconformities.[5] Further, the legislature has given property owners the right to repair or replace a nonconformity so long as they do not expand the nonconformity. In other words, as long as the property owner does not expand the nonconformity, she does not need municipal approval to take corrective or remedial action on the nonconformity. But under paragraph (b), if the property owner seeks to expand the nonconformity, the municipality *may*, by ordinance, permit the expansion.

Consistent with the authority the legislature granted to it in paragraph (b) of subdivision 1e, the City has an ordinance that addresses the expansion of nonconformities. *See* Minnetonka City Code § 300.29(g)(1). This ordinance provides that "an expansion of any non-conforming use may not be done without first obtaining a variance." *Id.* Liebeler's proposed addition to her detached garage required a variance because she proposed to "oc-

---

4. Liebeler did not propose to expand the footprint of her garage, and it is undisputed that even as remodeled the garage would still be 17 feet from the yard line. In other words, the scope of the nonconformity would not be expanded if Liebeler's request were granted. The City nevertheless concedes that the variance sought an "expansion" for purposes of Minn.Stat. § 462.357, subd. 1e, and we treat it as such for purposes of this opinion.

5. The statute allows the municipality to require a nonconformity to be discontinued when it "is discontinued for a period of more than one year," or "is destroyed by fire or other peril to the extent of greater than 50 percent of its market value, and no building permit has been applied for within 180 days of when the property is damaged." Minn. Stat. § 462.357, subd. 1e(a)(1) and (2).

cup[y] space within a non-conforming area that was previously not occupied ... vertically." *Id.*

Krummenacher argues that because state law is superior to municipal law, the City cannot grant a variance pursuant to its own ordinance if that variance violates state law. *See Denney v. City of Duluth,* 295 Minn. 22, 26, 202 N.W.2d 892, 894 (1972) ("It is fundamental that a municipality's power to regulate land use by zoning exists by virtue of authority delegated to it by the state."). But Minn.Stat. § 462.357, subd. 1e(b), grants the City the discretion to permit the expansion of a nonconformity by ordinance. The City provided a mechanism for expansion in section 300.29(g)(1), through a variance application, and Krummenacher makes no argument that Liebeler's request for a variance did not satisfy that section of the City Code.

Because the legislature gave the City discretion to authorize the expansion of Liebeler's nonconforming garage, we hold that the City's decision to allow Liebeler to seek a variance under the ordinance to expand a nonconformity was consistent with Minn.Stat. § 462.357, subd. 1e.

## II.

■■ We turn next to Krummenacher's argument that the City's decision must be set aside because it was arbitrary and capricious. Municipalities have "broad discretionary power" in considering whether to grant or deny a variance. *VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983). We review such decisions "to determine whether the municipality "was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination." *In re Stadsvold,* 754 N.W.2d 323, 332 (Minn.2008) (internal quotation omitted).

### A.

Krummenacher argues that the City's decision was arbitrary and capricious because the City did not apply the proper standard to determine whether Liebeler demonstrated "undue hardship" as defined in Minn.Stat. § 462.357, subd. 6. This provision allows a city to grant a variance "from the literal provisions of the ordinance in instances where their strict enforcement would cause undue hardship because of circumstances unique to the individual property under consideration." Minn.Stat. § 462.357, subd. 6.

■ Minnesota Statutes § 462.357, subd. 6, provides a definition of "undue hardship," and that definition requires that three factors be met. Specifically, the statute defines "undue hardship" as meaning,

the property in question cannot be put to reasonable use if used under conditions allowed by the official controls, the plight of the landowner is due to circumstances unique to the property not created by the landowner, and the variance, if granted, will not alter the essential character of the locality.

*Id.*[6] To receive a variance, the applicant must show that he or she meets all of the

---

**6.** The Minnetonka City Code has almost identical provisions. Minnetonka City Code § 300.07.1(a) ("A variance may be granted from the literal provisions of this ordinance in instances where strict enforcement would cause undue hardship because of circumstances unique to the individual property under consideration and when it is demonstrated that such actions would be consistent with

the spirit and intent of this ordinance. Undue hardship means the property in question cannot be put to a reasonable use if used under conditions allowed by this ordinance, the plight of the landowner is due to circumstances unique to the property not created by the landowner, and the variance, if granted,

three statutory requirements of the "undue hardship" test. *Id.* In addition to satisfying the "undue hardship" requirement, the statute allows municipalities to grant variances only "when it is demonstrated that such actions will be in keeping with the spirit and intent of the ordinance." *Id.* Krummenacher argues that Liebeler's application does not meet any of the requirements for "undue hardship."

The first factor a variance applicant must establish to satisfy the statute's definition of "undue hardship" is that "the property in question cannot be put to reasonable use if used under conditions allowed by the official controls." Minn.Stat. § 462.357, subd. 6; *see also* Minnetonka City Code § 300.07.1(a). Krummenacher argues that based on the plain and unambiguous language of the statute, a municipality may grant a variance only when the property cannot be put to any reasonable use without it. According to Krummenacher, Liebeler had a reasonable use for her garage without the addition of a yoga studio and craft room—its current use as a storage space for vehicles. Krummenacher argues therefore that the City did not have the statutory authority to grant the variance.

The court of appeals rejected this argument, relying on its decision in *Rowell v. Board of Adjustment of Moorhead*, 446 N.W.2d 917 (Minn.App.1989), *rev. denied* (Minn. Dec. 15, 1989). The court in that case interpreted the "undue hardship" section of Minn.Stat. § 462.357, subd. 6, as requiring a variance applicant to show that the "property owner would like to use the property in a reasonable manner that is prohibited by the ordinance." *Id.* at 922.

The City urges that we should embrace the interpretation of "undue hardship" from *Rowell*, and it appears from the record that the *Rowell* "reasonable manner"

standard is the standard the City used in evaluating Liebeler's request for a variance. The City determined that the expansion of the garage was a reasonable use of the property and that the request met the other requirements of the statute. Specifically, as reflected in the City Council Resolution, the City found that "the proposal is reasonable" and with respect to "undue hardship," that "[t]here is an undue hardship due to the topography of the site, width of the lot, location of the driveway and existing vegetation."

The plain language of the statute and our precedent compel us to reject the City's invitation to adopt *Rowell*'s interpretation of "undue hardship." The statute provides that to prove "undue hardship," the variance applicant must show that "the property in question cannot be put to a reasonable use" without the variance. Minn.Stat. § 462.357, subd. 6. Notwithstanding this language, the court of appeals concluded that "[t]his provision does not mean that a property owner must show the land cannot be put to any reasonable use without the variance." *Rowell*, 446 N.W.2d at 922. The court of appeals essentially rewrote the statute to mean that a municipality may grant a variance when the "property owner would like to use the property in a reasonable manner that is prohibited by the ordinance." *Id.* at 922. Although the *Rowell* "reasonable manner" standard has been used for over 20 years, we simply cannot reconcile that standard with the plain language of the statute.

The *Rowell* standard is also inconsistent with our precedent. In support of the application of a "reasonable manner" standard for determining "undue hardship," *Rowell* cites *Curry v. Young*, 285 Minn. 387, 173 N.W.2d 410 (1969), for the proposition that a variance is "required where a

would not alter the essential character of the neighborhood.").

setback requirement would force a property owner to build a much smaller structure." *Id.* at 922. The version of Minn. Stat. § 462.357 in effect when *Curry* was decided did not contain the definition of "undue hardship" that is in the current version of the statute. *See* Minn.Stat. § 462.357 (1969). Moreover, while we discussed in *Curry* the dimensions of a structure that could theoretically be built to comply with the statutory requirements, we based our determination that the variance was properly granted on the municipality's ordinance. That ordinance required a showing of "particular hardship," and we concluded that the standard was met because the "plaintiffs' lot, in the absence of a variance, would be unusable for any purpose." *Curry*, 285 Minn. at 388–89, 396, 173 N.W.2d at 411, 415. The standard we applied in *Curry* is more rigorous than the "reasonable manner" standard adopted in *Rowell*, and appears consistent with the plain language of the first part of the "undue hardship" definition that is in the current statute. *See* Minn. Stat. § 462.357, subd. 6.

In addition, in formulating the "reasonable manner" standard, the court in *Rowell* appears to have relied on the "practical difficulties" standard.[7] *See Rowell*, 446 N.W.2d at 922. But we have made a clear distinction between the "practical difficulties" standard and the "undue hardship" standard. *See Stadsvold*, 754 N.W.2d at 328–31. As we explained in *Stadsvold*, the "practical difficulties" standard applies to review of county decisions to grant area variances, while the "undue hardship" standard applies to all municipal decisions to grant variances. *Id.* at 327–28 & n. 2. *Compare* Minn.Stat. § 462.357, subd. 6, *with* Minn.Stat. § 394.27, subd. 7 (2008).[8]

 In *Stadsvold*, we interpreted Minn.Stat. § 394.27, subd. 7, which sets forth the statutory standard for county variances. This statute contains both the "practical difficulties" standard and a "particular hardship" standard. Specifically, section 394.27 authorizes a county to grant variances from "the terms of any official control" but only when the property owner would face "practical difficulties or particular hardship" in meeting "the strict letter of any official control." Minn.Stat. § 394.27, subd. 7.[9] We distinguished the "less rigorous 'practical difficulties'" standard that applies to area variance applica-

---

**7.** In support of the application of this standard, the court of appeals cited *Merriam Park Community Council, Inc. v. McDonough*, 297 Minn. 285, 289–90, 210 N.W.2d 416, 419 (1973), *overruled on other grounds by Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 868 n. 4 (Minn.1979). As in *Curry*, the version of Minn.Stat. § 462.357 in effect when *Merriam Park* was decided did not contain the definition of "undue hardship" that is in the current version of the statute. *See* 297 Minn. at 289–90, 210 N.W.2d at 418–19 (quoting statute).

**8.** While Minn.Stat. § 462.357, subd. 6, and Minn.Stat. § 394.27, subd. 7, both set forth standards for granting variances, section 462.357, subdivision 6, applies to municipalities and section 394.27, subdivision 7, applies to counties.

**9.** The same dichotomy of language at issue in *Stadsvold* existed in the predecessor to the municipal zoning statute, section 462.357.

Until 1965, section 462.22 (enacted in 1929, repealed in 1965) granted municipalities the power to vary or modify the application of a zoning regulation where there were "practical difficulties or unnecessary hardship" in complying with the strict letter of the regulation. Minn.Stat. § 462.22 (1961). In 1965, the legislature replaced Minn.Stat. § 462.22 with Minn.Stat. § 462.357. Act of May 22, 1965, c. 670, § 7, 1965 Minn. Laws 995, 1000–03. The new statute replaced the "practical difficulties or unnecessary hardship" standard with the current single "undue hardship" standard. *Id.* "Undue hardship" was undefined in the statute until 1982, when the legislature, borrowing the definition of "hardship" from the county variance statute, Minn.Stat. § 394.27, added the current definition of "undue hardship" to the statute. Act of Mar. 22, 1982, ch. 507, § 22, 1982 Minn. Laws 592, 593.

tions from the more rigorous "particular hardship" standard that applies to use variance applications. *Stadsvold,* 754 N.W.2d at 330–31.[10]

Adopting the *Rowell* "reasonable manner" standard would be inconsistent with the distinction we made in *Stadsvold* between the "practical difficulties" and "hardship" standards. The legislature defined the "hardship" standard in the county statute the same way it defined the "undue hardship" standard in the municipal statute.[11] Because the legislature used the same language in both the county and city variance statutes when defining "hardship," our analysis in *Stadsvold* requires us to conclude that the "undue hardship" standard in Minn.Stat. § 462.357, subd. 6, is more demanding than the "practical difficulties" standard the court of appeals appears to have relied on in *Rowell,* 446 N.W.2d at 922.

Moreover, with respect to the "practical difficulties" standard, we identified in *Stadsvold* several factors the county should consider in assessing whether that standard was met:

(1) how substantial the variation is in relation to the requirement; (2) the ef-

fect the variance would have on government services; (3) whether the variance will effect a substantial change in the character of the neighborhood or will be a substantial detriment to neighboring properties; (4) whether the practical difficulty can be alleviated by a feasible method other than a variance; (5) how the practical difficulty occurred, including whether the landowner created the need for the variance; and (6) whether, in light of all of the above factors, allowing the variance will serve the interests of justice.

754 N.W.2d at 331 (footnote omitted). *Rowell'*s interpretation of the "undue hardship" standard, requiring only that the proposed use be "reasonable," would render the "undue hardship" standard in section 462.357 less stringent than the "practical difficulties" standard and much less stringent than the "particular hardship" standard in the county variance statute, which the "undue hardship" standard appears to parallel. *See Stadsvold,* 754 N.W.2d at 331. In short, our analysis in *Stadsvold* simply does not leave room for the *Rowell* "reasonable manner" standard.[12]

10. As we discussed in *Stadsvold,* "[t]here are two types of variances: use variances and area variances. 'A use variance permits a use or development of land other than that prescribed by zoning regulations.' ... An area variance controls 'lot restrictions such as area, height, setback, density and parking requirements.' " 754 N.W.2d at 329 (quoting *In re Appeal of Kenney,* 374 N.W.2d 271, 274 (Minn.1985)).

11. " 'Hardship' as used in connection with the granting of a variance means the property in question cannot be put to a reasonable use if used under the conditions allowed by the official controls; the plight of the landowner is due to circumstances unique to the property not created by the landowner; and the variance, if granted, will not alter the essential character of the locality." Minn.Stat. § 394.27, subd. 7.

12. The City argues that, even if *Rowell* was based on an erroneous reading of the text of section 462.357, subdivision 6, the standard in *Rowell* has been used by municipalities for many years in determining whether to grant a variance. *See, e.g., Mohler v. City of St. Louis Park,* 643 N.W.2d 623, 631 (Minn.App.2002); *Nolan v. City of Eden Prairie,* 610 N.W.2d 697, 701 (Minn.App.2000); *Sagstetter v. City of St. Paul,* 529 N.W.2d 488, 492 (Minn.App.1995). The City suggests that, because the legislature has amended section 462.357 many times since *Rowell* and has not disturbed the court of appeals' interpretation of the "undue hardship" standard, we should treat the legislature as having ratified the *Rowell* standard. But the legislature has provided that "[w]hen a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such

We recognize that the standard we apply today, while followed elsewhere, is not the universal rule.[13] For example, in *Simplex Technologies, Inc. v. Town of Newington*, 145 N.H. 727, 766 A.2d 713 (2001), the New Hampshire Supreme Court provided a thorough and insightful review of the development of land use variance law, and its practical construction in modern times. The New Hampshire statute did not contain a specific definition of "unnecessary hardship," like our statute does, and the court concluded that its prior definition of the statutory term "unnecessary hardship" "ha[d] become too restrictive in light of the constitutional protections by which it must be tempered." *Id.* at 717. The New Hampshire Supreme Court framed the issue in the following terms:

> Inevitably and necessarily there is a tension between zoning ordinances and property rights, as courts balance the right of citizens to the enjoyment of private property with the right of municipalities to restrict property use. In this balancing process, constitutional property rights must be respected and protected from unreasonable zoning restrictions.

*Id.* at 716–17. In light of these considerations, the New Hampshire Supreme Court said that "unnecessary hardship" would, in the future, be established when a landowner showed that (1) a zoning restriction as applied interferes with a reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Id.* at 717.[14]

language." Minn.Stat. § 645.17(4) (2008). The court of appeals is not "a court of last resort." *See Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.,* 637 N.W.2d 270, 276 (Minn.2002) (stating that the court of appeals is not the court of last resort with respect to statutory construction). Nor does the denial of a petition for review give a court of appeals decision more precedential value than a court of appeals decision from which no review was sought. *Murphy v. Milbank Mut. Ins. Co.,* 388 N.W.2d 732, 739 (Minn.1986). We therefore reject the City's argument that the legislature has ratified the *Rowell* standard.

**13.** While most jurisdictions use the phrase "unnecessary hardship" rather than "undue hardship" as the applicable standard, many jurisdictions appear to require that the variance applicant establish real hardship if the variance is denied rather than simply requiring that the applicant show the reasonableness of the proposed use. *See, e.g., Larsen v. Zoning Bd. of Adjustment of Pittsburgh,* 543 Pa. 415, 672 A.2d 286, 290–92 (1996) (holding that the "mere desire to provide more room for a family member's enjoyment" is insufficient to constitute "unnecessary hardship" under the statute and requiring applicants to show that, if the variance request is denied, the property will be "practically useless"); *OK Properties v. Zoning Bd. of Review of Warwick,* 601 A.2d 953, 955 (R.I.1992) ("The court has determined that unnecessary hardship exists when restricting the property to the permitted uses within the zoning ordinance will deprive the property owner of all beneficial use of the property and that granting a variance becomes necessary to avoid an indirect confiscation of the property."); *Cochran v. Fairfax County Board of Zoning Appeals,* 267 Va. 756, 594 S.E.2d 571, 577 (2004) ("[T]he [Board of Zoning Appeals] has no authority to grant a variance unless the effect of the zoning ordinance, as applied to the piece of property under consideration, would, in the absence of a variance, interfere with all reasonable beneficial uses of the property, taken as a whole.") (internal quotation marks omitted); 3 *Anderson's Law of Zoning* § 20.16 (Kenneth H. Young ed., 4th ed., 1996) (describing different states' approaches to the "unnecessary hardship" standard and suggesting that most states give the term a fairly restrictive construction).

**14.** These standards were subsequently codified. *See* N.H.Rev.Stat. Ann. § 674:33 (Supp. 2009).

Had the Minnesota Legislature not defined "undue hardship" in Minn.Stat. § 462.357, subd. 6, we might consider the approach articulated in *Simplex.*[15] A flexible variance standard allows municipalities to make modest adjustments to the detailed application of a regulatory scheme when a zoning ordinance imposes significant burdens on an individual, and relief can be fashioned without harm to the neighbors, the community, or the overall purposes of the ordinance. *See* David W. Owens, *The Zoning Variance: Reappraisal and Recommendations for Reform of a Much–Maligned Tool,* 29 Colum. J. Envtl. L. 279, 317 (2004) ("If the variance power is to be used both as a constitutional safeguard and as a tool for flexibility, zoning enabling acts and local ordinances should be amended to delineate these two purposes and set different standards for each. The failure to make such a distinction underlies much of the past controversy regarding variances. Courts and commentators have traditionally viewed the variances as the former—a very limited tool for avoidance of constitutional infirmity in extraordinary cases. Most variance petitions, and consequently most board of adjustment decision-making, have viewed the variances as the latter—a tool to provide flexible implementation rather than constitutional infirmity.").

 We recognize that the *Rowell* "reasonable manner" standard represents a longstanding interpretation of the undue hardship standard in Minn.Stat. § 462.357, subd. 6, and that Minnesota municipalities have been granting variances under the "reasonable manner" standard for many years. We also recognize that our decision will result in a restriction on a municipality's authority to grant variances as compared with the "reasonable manner" standard. But whatever value we may find in a more flexible standard, particularly with regard to area variances, we cannot ignore the plain language of the statute. *See State v. Peck,* 773 N.W.2d 768, 773 (Minn. 2009) ("We have no opportunity to ignore part of the legislature's definition."). We are unable to interpret the statutory language to mean anything other than what the text clearly says—that to obtain a municipal variance, an applicant must establish that "the property in question cannot be put to a reasonable use if used under conditions allowed by the official controls." Minn.Stat. § 462.357, subd. 6. Therefore, unless and until the legislature takes action to provide a more flexible variance standard for municipalities, we are constrained by the language of the statute to hold that a municipality does not have the authority to grant a variance unless the applicant can show that her property cannot be put to a reasonable use without the variance.

Based on the plain language of the statute, and our precedent interpreting language similar to "undue hardship" in the context of a local government's authority to grant variances, we reject the "reasonable manner" standard from *Rowell.* We hold that the City inaccurately applied the first factor in the "undue hardship" definition of Minn.Stat. § 462.357, subd. 6. Our resolution of this issue makes it unnecessary for us to resolve the other issues Krummenacher raises on appeal.

### B.

 Having concluded that the City applied the law incorrectly, we must address the remedy. In cases where a variance has been denied, the general rule is that "[i]f the zoning authority's decision is

---

**15.** The factors set forth in *Simplex* are not dissimilar to the factors we embraced in *Stadsvold* in construing "practical difficul-ties." *See* 754 N.W.2d at 331 (discussing factors for consideration under the "practical difficulties" standard).

arbitrary and capricious, the standard remedy is that the court orders the permit to be issued." *Stadsvold,* 754 N.W.2d at 332; *see also In re Livingood,* 594 N.W.2d 889, 895 (Minn.1999). But there is an exception to this general rule "when the zoning authority's decision is premature and not necessarily arbitrary." *Stadsvold,* 754 N.W.2d at 333 (internal quotation omitted). For example, in *Earthburners, Inc. v. County of Carlton,* where it was unclear whether the zoning authority had applied the relevant statutory provisions, we remanded to the zoning authority for "renewed consideration" under the appropriate standard. 513 N.W.2d 460, 463 (Minn.1994).

Similarly, in *Stadsvold,* we remanded a variance application to the county board because the board applied the wrong standard:

> The Board, using an "adequate hardship" standard, did not consider practical difficulties. The Stadsvolds argue the Board's decision was therefore arbitrary and capricious. The Board did not have the benefit of our holding in this case regarding "practical difficulties." We cannot tell whether the Board's decision was arbitrary and capricious. Therefore, remand is required to allow the Board to consider the Stadsvolds' variance application in light of our holding that applications for area variances are to be considered using the "practical difficulties" standard in Minn.Stat. § 394.27, subd. 7.

*Stadsvold,* 754 N.W.2d at 332. Our precedent therefore supports the conclusion that a property owner is entitled to have his or her variance application heard under the correct legal standard, which supports a remand in this case. A remand is particularly appropriate in this case because a property owner seeking to utilize her property should not be penalized due to the City's application of the wrong legal standard. We reverse and remand the matter to the City for renewed consideration of Liebeler's variance request in light of our rejection of the "reasonable manner" standard from *Rowell.*

Reversed and remanded.

DIETZEN, J., took no part in the consideration or decision of this case.