*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0112**

Mary Nesgoda,
Relator,

vs.

County of Le Sueur, et al.,
Respondents.

**Filed October 13, 2025**
**Reversed and remanded**
**Worke, Judge**

Le Sueur County Board of Commissioners

Elizabeth Lambrecht, Lambrecht Law, St. Paul, Minnesota (for relator)

Kristin C. Nierengarten, Shelby M. Borthwick, Squires, Waldspurger & Mace, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

In this certiorari appeal, relator challenges respondent county-board's denial of relator's plat application for a private cemetery. The board's sole basis for denying the application was its understanding that the establishment of private cemeteries is statutorily

prohibited. Because we conclude that the plain language of Minn. Stat. § 307.01 (2024) permits relator to establish a private cemetery, we reverse and remand.

## FACTS

Relator Mary Nesgoda desires to establish a private cemetery on her land. The property is in an Agriculture (A) zoning district. Nesgoda submitted an application for approval of a final plat for the cemetery to respondent County of Le Sueur (the county) in October 2024. Nesgoda has not submitted an application for a conditional-use permit (CUP), which will also be necessary to establish the cemetery.

The Le Sueur County Planning Commission (the commission) considered the plat application on November 14, 2024. The commission determined by a majority vote that Nesgoda's application met the plat requirements for approval. But the commission also considered, among other things, a letter from the Le Sueur County Attorney, stating his opinion that private cemeteries are not authorized by current Minnesota law. The commission also considered Nesgoda's attorney's statements that private cemeteries are allowed under Minnesota law. The commission elected to forward the application to respondent Le Sueur County Board of Commissioners (the board) with "no recommendation."

The board considered Nesgoda's application on November 26, 2024. The board did not make any findings, reference relevant ordinances, or state for the record any determinations concerning the merits of Nesgoda's plat application. A board member moved to deny the application, based on the "discussion and . . . hearing some thoughts by legal counsel." The motion carried. The county provided Nesgoda written notice of the

2

denial on November 26, 2024. The denial letter stated that, "[b]ased on information gathered during the November 14, 2024, Planning Commission public hearing, the [board's] decision to deny the request was supported by the following: The legal opinion of [Le Sueur] County Attorney . . . as stated in the letter included in the Planning Commission packet."

This appeal followed.

**DECISION**

"The denial or approval of a preliminary or final plat application is a quasi-judicial administrative decision." *Watab Twp. Citizen All. v. Benton Cty. Bd. of Comm'rs*, 728 N.W.2d 82, 93 (Minn. App. 2007), *rev. denied* (Minn. May 15, 2007). We review a quasi-judicial decision subject to certiorari review to determine whether it was "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *In re Stoick Creek, LLC*, 999 N.W.2d 915, 919 (Minn. App. 2023) (quotation omitted); *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75-76 (Minn. 2015) (reviewing quasi-judicial decision concerning CUP to determine whether city acted "unreasonably, arbitrarily, or capriciously," including whether "the reasons given by the city were legally sufficient" and, if so, "if the reasons had a factual basis in the record").

The primary focus of the parties' dispute is whether the board acted under an erroneous theory of the law when it denied Nesgoda's plat application. We must decide whether the establishment of a private cemetery is prohibited under Minnesota law. To do so, we must interpret provisions within chapters 306 and 307 of the Minnesota Statutes. Minn. Stat. §§ 306.01-.99, 307.01-.12 (2024). "The goal of statutory interpretation is to

effectuate legislative intent by reading the statute as a whole." *Energy Transfer LP v. Greenpeace Int'l*, 23 N.W.3d 554, 564 (Minn. 2025). "We look first to the plain meaning of the statute to decide whether the text is ambiguous," and "[i]f the statute is unambiguous, our analysis will end there." *Id.* (citation omitted).

Section 307.01 provides, in part:

> Any private person and any religious corporation may establish a cemetery on the person's or corporation's own land in the following manner: The land shall be surveyed and a plat thereof made. A stone or other monument shall be established to mark one corner of such cemetery, and its location shall be designated on the plat. The plat and the correctness thereof shall be certified by the surveyor, whose certificate shall be endorsed thereon, and with such endorsement shall be filed for record with the county recorder in the county where the cemetery is located, showing the area and location of the cemetery.

Under the plain language of section 307.01, "[a]ny private person," such as Nesgoda, "may establish a cemetery on the person's . . . own land," such as Nesgoda's land. And it provides a particular way to do so, including by making a plat and filing it "for record with the county recorder in the county where the cemetery is located." The plain meaning of the statute is unambiguous—it allows Nesgoda to establish a cemetery on her land and directs that she do so through the platting process.

Respondents' arguments do not directly address the plain language of section 307.01, but instead focus on the two other statutes which, they contend, supersede section 307.01. First, Minn. Stat. § 306.01 provides, "[p]ublic cemetery associations existing on March 1, 1906, shall continue under the forms of organization adopted by them and retain the rights and powers then possessed. Cemetery associations and private

4

cemeteries established after that date shall be organized and governed by this chapter." And, second, Minn. Stat. § 306.87, subd. 3, provides, "[a]ll cemeteries started or established as public cemeteries and all cemeteries hereafter started or established, except cemeteries established by religious corporations, are public cemeteries within the provisions of this chapter." We are not convinced.

Respondents argue that section 306.01 controls the establishment of new private cemeteries. But section 306.01 does not address whether, or under what circumstances, a private cemetery may be *established*. By its plain terms, the statute addresses only how a private cemetery is to be *organized* and *governed*. In doing so, it explicitly acknowledges that private cemeteries may still be established after March 1, 1906.[1] We see no basis in the plain language of section 306.01 to conclude that the establishment of private cemeteries is categorically prohibited, as respondents suggest. To the contrary, it recognizes that private cemeteries may be established today.

Respondents next argue that, under Minn. Stat. § 306.87, subd. 3, all cemeteries created after its enactment "must be public cemeteries unless the cemetery is established by a religious corporation." We disagree. Section 306.87, subdivision 3, provides that "all cemeteries hereafter started or established . . . are public cemeteries within the provisions of this chapter." But Minn. Stat. § 306.87, subd. 1, also provides that "the following

---

[1] Respondents argue that Minn. Stat. § 307.01 is not irreconcilable with their interpretation because it "governs private cemeteries established" before March 1, 1906, and Minn. Stat. § 306.01 governs "those established after March 1, 1906." But that would require us to read Minn. Stat. § 306.01 as simultaneously acknowledging that private cemeteries may be established after March 1, 1906, but also prohibiting the establishment of private cemeteries after that date. That is not a reasonable interpretation of the statute.

5

definitions"—including the definition of "[p]ublic cemeteries" in subdivision 3—"apply to *this chapter*." (Emphasis added.) Therefore, at most, Minn. Stat. § 306.87, subd. 3, makes provisions of chapter 306 applicable to private cemeteries which are established. But the definition is, by its own terms, limited to chapter 306, and we cannot apply this language to prohibit what section 307.01 otherwise plainly allows.

In sum, we conclude that Minn. Stat. § 307.01 unambiguously allows a person to establish a private cemetery on their land and directs that they do so through the platting process. Minnesota Statutes sections 306.01 and 306.87, subdivision 3, are not to the contrary. While those statutes make chapter 306 applicable to private cemeteries, at least in certain respects, they do not apply to the establishment of private cemeteries or the platting process. Notably, respondents have advanced no argument that Nesgoda violates any other specific provisions of chapter 306, but, even if they did, such questions are separate from the question before the board: whether to approve Nesgoda's plat application. Minnesota Statutes section 307.01 makes clear that when the board denied Nesgoda's application, it was acting under an erroneous theory of the law.

Nesgoda contends that, because her "application met all of the requirements of Minn. Stat. § 307.01 and the standards of the Le Sueur Planning and Zoning Commission," we should reverse and remand with directions to the board "to approv[e] the plat application and issue a [CUP], if necessary." Based on the issues presented and facts of this case, we remand to the board solely for renewed consideration of Nesgoda's plat application.

6

If an "ordinance specifies standards to which a proposed plat must conform, it is arbitrary as a matter of law to deny approval of a plat which complies in all respects" with the ordinance. *Nat'l Capital Corp. v. Vill. of Inver Grove Heights*, 222 N.W.2d 550, 552 (Minn. 1974). And if the board's decision is arbitrary, "the standard remedy is that the court orders" approval. *In re Stadsvold*, 754 N.W.2d 323, 332 (Minn. 2008). But there is an exception to the "standard remedy" when a board's decision was "premature and not necessarily arbitrary." *Id.* at 333 (quotation omitted). This may include when an appellate court clarifies the law on appeal. *See Krummenacher v. City of Minnetonka*, 783 N.W.2d 721, 733 (Minn. 2010) (clarifying applicable legal standard). Here, the board's decision concerning Nesgoda's plat application was based on its erroneous understanding that establishment of a private cemetery is prohibited under Minnesota law and, as a consequence, the board did not decide whether the application complied with the correct legal standard, Minn. Stat. § 307.01, and any applicable ordinances.[2] Therefore, it is appropriate to remand to the board for consideration of Nesgoda's plat application pursuant to the correct legal standard.

---

[2] We understand that Nesgoda, by arguing that she satisfied the standards required by the commission, agrees that her plat application must comply with the relevant ordinances in addition to Minn. Stat. § 307.01. To the extent that she argues to the contrary, we agree with respondents that Nesgoda has not provided any law to support the argument, and any prejudicial error is not obvious. Therefore, that argument is forfeited. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is [forfeited] and will not be considered on appeal unless prejudicial error is obvious on mere inspection.").

Regarding a CUP, the record does not reflect that Nesgoda has applied for a CUP from the county or that the county considered such an application in its decision. Because Nesgoda seeks to use the land as a cemetery, and the land is in an Agriculture (A) zoning district, Nesgoda is required to apply for a CUP. *See* Le Sueur County, Minn., Zoning Ordinance § 21 (2022) (providing CUP requirements); Le Sueur County, Minn., Zoning Ordinance § 8, subd. 5 (2024) (including cemeteries as a conditional use in an Agriculture (A) zoning district). While Nesgoda may apply to the county for a CUP, we do not consider any issues related to that application in this appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that reviewing court generally will consider only issues raised and considered below); *In re Expulsion of A.D.*, 883 N.W.2d 251, 261 (Minn. 2016) (applying *Thiele* in certiorari appeal).[3]

**Reversed and remanded.**

---

[3] Nesgoda also requests that we award her costs. This request is both procedurally and substantively flawed. While a prevailing party in an appeal may generally seek taxation of costs and disbursements, it may do so only after the filing of our decision. *See* Minn. R. Civ. App. P. 139.03, subd. 1. Regardless, in certiorari appeals, costs and disbursements may not be taxed "for or against the body to whom the writ is directed." Minn. R. Civ. App. P. 115.05; *Lund v. Comm'r of Pub. Safety*, 783 N.W.2d 142, 143 (Minn. 2010) (holding, based on sovereign immunity, that taxation of costs against state is not permitted when state acts in its sovereign capacity). Therefore, Nesgoda is not entitled to costs.