**Daniel S. ORTELL, Respondent,**

v.

**CITY OF NOWTHEN, Appellant.**

**No. A11–1155.**

Court of Appeals of Minnesota.

April 2, 2012.

Daniel S. Ortell, Andover, MN, pro se respondent.

James J. Monge, League of Minnesota Cities, St. Paul, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and CLEARY, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant City of Nowthen (the city) challenges the district court's summary judgment in favor of respondent Daniel Ortell that permits respondent to rebuild his nonconforming property. Appellant argues that the district court erred in interpreting Minn.Stat. § 462.357, subd. 1e(a)(2), to permit restoration of a nonconformity that is destroyed by greater than 50 percent of its value without the need for a variance, when the property owner fails to apply for a building permit within 180 days after the damage.

Because we conclude that the statute is ambiguous and that the district court's interpretation of the statute is not in accord with legislative intent, we reverse.

## FACTS

Respondent owns property within the boundaries of the city. Respondent's home, an old farmhouse, is located within the 150–foot setback from the adjacent county road and is therefore a nonconformity under the city's current zoning code. In September 2007, respondent applied for and received a permit from the city to replace the roof, siding, and windows of the house. In October 2007, the house was largely destroyed when roofers swung a boom into the rotting frame and the house collapsed. According to the county assessor, the value of the house was diminished by more than 50 percent following its collapse. In November 2007, respondent began rebuilding the house; this activity was observed by the city building inspector, who issued a stop-work order because the construction was beyond the activity allowed by the original permit. The building inspector provided respondent with an application for a building permit to rebuild the structure.

Respondent had health problems following the collapse of the house and did not apply for a building permit. In January 2010, respondent applied for a variance so that he could rebuild the house on the existing foundation. The city council, relying on the zoning commission's recommendation, denied the variance. On appeal, the board of adjustment voted to affirm the city council's denial of the variance request. Respondent appealed the decision to the district court.

Both parties moved for summary judgment. The district court issued its order granting summary judgment to the city, concluding that the city properly denied respondent's request for a variance because respondent had not demonstrated undue hardship. But the district court also granted summary judgment in favor of respondent, stating that the city "im-properly denied [respondent] the right to rebuild his destroyed property without a variance based on its determination that he had failed to apply for a permit within 180 days of the accident which destroyed his nonconforming home." The court concluded that the city's findings were inadequate "to support its determination that [respondent] lacked the right to repair or replace the nonconforming structure." This appeal followed.

## ISSUE

Did the district court err by concluding that under Minn.Stat. § 462.357, subd. 1e(a)(2), respondent was entitled to rebuild his nonconforming house without a variance, despite his failure to apply for a building permit within 180 days after the property was damaged and its value was reduced by more than 50 percent?

## ANALYSIS

On appeal from summary judgment, we consider whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Taylor v. LSI Corp. of America,* 796 N.W.2d 153, 155 (Minn.2011). Because there are no disputed material facts here, the issue before us is one of statutory construction, which is a question of law subject to de novo review. *Krummenacher v. City of Minnetonka,* 783 N.W.2d 721, 726 (Minn.2010). When construing a statute, we must assess whether, on its face, the language is clear as written. *Id.* at 726. When a statute is clear and unambiguous, a reviewing court may not ignore the letter of the law "under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2010). We assume that the legislature does not intend an absurd or unreasonable result, or one that is impossible to execute, and that it intends that all parts of a

statute are to be given effect. Minn.Stat. § 645.17 (2010).

■ Minn.Stat. § 462.357, subd. 1e(a) states that a nonconforming use may be continued

including through repair, replacement, restoration, maintenance, or improvement, but not including expansion, unless:

(1) the nonconformity or occupancy is discontinued for a period of more than one year; or

(2) any nonconforming use is destroyed ... to the extent of greater than 50 percent of its estimated market value ... and no building permit has been applied for within 180 days of when the property is damaged. In this case, a municipality may impose reasonable conditions upon a zoning or building permit in order to mitigate any newly created impact on adjacent property or water body.

The district court interpreted the second clause to mean that a property owner has the absolute right to rebuild a nonconformity if the owner applies for a building permit within 180 days; but if the application is not made within 180 days, the property owner has the right to restore the nonconformity subject to the municipality's reasonable conditions. The district court reasoned that the sentence, "[i]n this case, a municipality may impose reasonable conditions ..." would serve no purpose unless a property owner was permitted to restore a nonconformity.

Equally, the city maintains that this sentence permits a municipality to place conditions on a building permit, if the property owner applies within 180 days of the damage, and that otherwise the nonconformity may not continue. Both the district court and the city assert that this language is not ambiguous.

A statute is ambiguous if it is susceptible to more than one reasonable meaning. *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn.2010). We conclude that the statute here is ambiguous because it can reasonably be interpreted in more than one way. Because it is ambiguous, we must attempt to ascertain the legislative intent. When a statute is ambiguous, we may consider the following:

(1) the occasion and necessity for the law;

(2) the circumstances under which it was enacted;

(3) the mischief to be remedied;

(4) the object to be obtained;

(5) the former law, if any, including other laws upon the same or similar subjects;

(6) the consequences of a particular interpretation;

(7) the contemporaneous legislative history; and

(8) the legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16; *Brayton*, 781 N.W.2d at 364.

■ There are several general principles underlying zoning law. "Zoning ordinances were established to control land use, and development in order to promote public health, safety, welfare, morals, and aesthetics." *In re Stadsvold*, 754 N.W.2d 323, 329 (Minn.2008). Competing with this are common law property rights, for which reason zoning ordinances are construed narrowly against the municipality and broadly in favor of the property owner. *Id.* Because of these competing interests, nonconformities are generally permitted to continue, but not expand, to encourage elimination of the nonconformity "due to obsolescence, exhaustion, or destruction." *Freeborn Cnty. v. Claussen*, 295 Minn. 96,

99, 203 N.W.2d 323, 325 (1972); *see also Krummenacher*, 783 N.W.2d at 726.

Our review of the legislative history of this statute reveals a certain progression in the development of the law. In the first version of the statute from 2002, a nonconformity could continue, including repair or maintenance, until discontinued for more than a year or if destroyed to the extent of 50 percent of its market value; there were no conditions included that would permit a nonconformity to continue after either occurrence. 2001 Minn. Laws ch. 174, § 1. In 2004, this subsection was amended to read:

> Any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair or, replacement, restoration, maintenance, but if or improvement, but not including expansion, unless
>
> (1) the nonconformity or occupancy is discontinued for a period of more than one year,; or
>
> (2) any nonconforming use is destroyed by fire or other peril to the extent of greater than 50 percent of its market value, and no building permit has been applied for within 180 days of when the property is damaged. In this case, a municipality may impose reasonable conditions upon a building permit in order to mitigate any newly created impact on adjacent property.

2004 Minn. Laws ch. 258, § 2. In 2009, the subsection was again amended to directly address shoreland issues. This progression suggests that the legislature intended to provide greater protection to a property owner's right to continue a nonconformity over time.

But we must also reconcile this evident intent with two other considerations. First, the legislature permits a municipality to adopt and enforce zoning laws, including laws that create or limit nonconformities. If subdivision 1e(a)(2) is interpreted to mean that there is effectively no time after which a nonconformity lapses, it is an absurd result; the legislature would not give a municipality the power to regulate nonconformities and then block their ability to regulate. *See* Minn.Stat. § 645.17(1) ("[T]he legislature does not intend a result that is absurd."). Second, we seek to give effect to all the provisions of a statute. Minn.Stat. § 645.17(2). If a nonconforming property owner may apply at any time, without limit, for a building permit, the first clause of the subdivision, which states that a nonconformity ceases if it is discontinued for a period of more than one year, has no meaning. Only one interpretation of this subdivision satisfies the rules of statutory construction: the language "[i]n this case" must refer to a building permit applied for within 180 days of the damage to the property.

We conclude that the legislature intended to permit a property owner to obtain a permit to rebuild a nonconformity if the permit was obtained within 180 days, but subject to reasonable conditions that would ameliorate the effect of permitting the nonconformity to continue.

## DECISION

Under Minn.Stat. § 462.357, subd. 1e(a)(2), a nonconformity may be continued until any nonconforming use is destroyed to the extent of greater than 50 percent of its value and no building permit is applied for within 180 days after the property is damaged. If a building permit is applied for within 180 days of the damage, the municipality may impose reasonable conditions on the building permit to mitigate any newly created impact on adjacent properties or water body. But if no build-

ing permit is applied for within 180 days of the damage, the nonconformity must end and any subsequent use or occupancy must be a conforming one.[1]

**Reversed.**

---

1. Although it is regrettable that respondent may have forfeited his right to rebuild his house without the need for a variance solely because ill health prevented him from applying for a building permit, the recent legislative amendment to Minn.Stat. § 462.357, subd. 6 (Supp.2011), which permits a variance to be granted upon a showing of "practical difficulties," rather than the more stringent standard of "undue hardship," may allow him to qualify for a variance.